## The Cheshire Turnpike *vs.* Stevens & a.

A turnpike corporation, having by its charter power to erect so many toll gates
as may be necessary to collect the tolls, may increase the number of gates
*originally* established by the corporation, and change their situation from
time to time, provided the gates are not placed in any position prohibited by
the charter.

A town cannot discontinue a highway during pleasure, with a reservation of a
right to open it at any time without paying damages.  The reservation in
such case will be void, and the discontinuance absolute.

If selectmen lay out a highway around a turnpike gate, for the purpose of ena-
bling those who travel along the turnpike road to avoid the payment of tolls,
they are liable, in an action on the case, for the damages sustained by the turn-
pike corporation.

Case, for opening a passage, or highway, round the plaintiffs'
turnpike gate, in Charlestown, on the 13th day of March,
1830, with intent to deprive the plaintiffs of the toll which
they would otherwise receive from persons travelling on
their turnpike road.

By an act of the legislature, passed on the 13th day of
December, 1804, the plaintiffs were authorized to make, and
keep in repair, a turnpike road, from Connecticut river, near
Charlestown meeting-house, through Charlestown, Langdon
and Surry, to the 3rd New-Hampshire Turnpike, near the
court-house in Keene.

The act provided that the corporation might erect so many gates or turnpikes, upon and across said road, as might be necessary to collect the tolls, provided that no gate should be erected across any part of said road which was then occupied as a highway.

The plaintiffs organized under said act, and proceeded and built the road.

A meeting of the corporation was held the 7th of September, 1808. The third article in the warrant for said meeting was : " To make such order as they may think proper as to the establishment of turnpike gates." At this meeting the following vote passed, viz. : " Voted, that the third article be referred to the directors."

On the first of October, 1808, two gates were erected, one in Surry, and the other at or near the line of Charlestown and Langdon.

On the 5th of July, 1810, another meeting was held, at which it was voted—" That the directors establish a toll-gate between Cheshire bridge and Jabez Walker's ; and a gate was accordingly established at the south end of Charlestown street ; and on the 7th day of January, 1823, the directors issued an order for the removal of this gate, from the south end of Charlestown street to a point near said bridge, north of the street, but within the limits specified in the vote of July 5th, before mentioned ; which is the same gate mentioned in the plaintiffs' declaration.

The plaintiffs continued to take toll, at this gate, from its establishment in 1823, till after the opening of the road complained of, in 1830.

On this evidence the court instructed the jury that this gate was legally established, and rightfully existing at the time and place above mentioned.

It was in evidence that the selectmen of Charlestown, on the 8th day of March, 1763, laid out a highway in the same place where the road complained of is located, which was used and travelled as such until the 14th of March, 1809, when

the town voted to discontinue said road during their pleasure only, and at any time to be opened by the town, without paying any damage to the owners of the land. It also appeared that said road was in part enclosed by the owners of the adjoining land, from 1814 to 1830, and in part from about 1809 to 1830; that portion leading immediately round the plaintiffs' gate having been enclosed from 1814 only. It was also in evidence that the town of Charlestown, at a legal meeting, held on the 26th day of February, 1830, voted that the selectmen be directed to open the old road, which had been discontinued as aforesaid, and that they take a bond to indemnify the town against keeping the same in repair.

The court on this evidence instructed the jury that the old road, prior to March 13th, 1830, was legally and absolutely discontinued; and that the defendants under the circumstances had no right to lay out and open a new road, for the purposes alleged in the declaration. To all which directions of the court the defendants excepted, and, the jury having returned a verdict for the plaintiffs, moved for a new trial.

*Hubbard & Gilchrist*, for the plaintiffs.

*Freeman*, for the defendants.

Green, J. It is contended, on the part of the defendants, that the plaintiffs, having fixed two gates on their road, in 1808, their power on this subject was exhausted, and that they had no power at a subsequent period to establish additional gates. They also contend that the directors had no power to establish the gate described in the plaintiffs' declaration, by the votes of 1808, and 1810.

That part of the act of incorporation granting the power to erect toll gates, is general. It authorizes the erection " of so many gates or turnpikes, upon and across said road, as may be necessary to collect their tolls." The object was to give the corporators the means of securing toll for all the

travel on their road ; and if the gates first erected were found inadequate for that purpose, they had the right to increase the number until the object was attained. As the means of evading the toll were multiplied, the corporation were at liberty to adopt additional measures to secure it. In the outset it must often happen that the necessary number and location of the gates cannot be foreseen ; and to preclude the corporation from adopting such measures in future as might be required to secure the profits of the road, to which they were justly entitled, would in some cases prove destructive to its interest. No instance has occurred, since the existence of turnpike roads in this state, where the right of the corporation to increase and locate their gates anew, has been questioned. It has been done in a variety of instances, and we see no reason for interfering, and abridging such corporations of this right. But it is contended that the directors who established the gate in question, had no authority to that effect. It may well be questioned whether their authority, under the vote of July 5, 1810, did not terminate with the erection of the gate they first established ; but it is deemed unnecessary to decide that question ; for although the directors may have acted without authority in removing the gate to another place in 1823, yet its continuance from that time till 1830 was a recognition and an affirmance, of the doings of the directors, on the part of the corporation, which made the act their own.

We are, therefore, of opinion that the instructions to the jury on the foregoing evidence were correct.

The defendants also contend that they had a right to enter, under the vote of the town of Charlestown, at their meeting held on the 26th day of February, 1830, and open the road for public travel ; and that they made the passage around the plaintiffs' gate accordingly.

This is attempted to be justified on the ground that there was formerly a public highway in the same place, which had been discontinued under such circumstances as gave the town

a right to open it whenever they should think proper; and that the town, by their vote at a legal meeting, directed the defendants, as selectmen, to open said road—which they accordingly did.

That there was, at an early period, a public highway laid out by the selectmen of Charlestown over the same ground where the road complained of is located, is without doubt; and it now exists as such unless it has since been discontinued.

It is equally certain, that on the 14th of March, 1809, said town at a legal meeting voted to discontinue the same highway, during their pleasure only, and reserving the right to open it at any time, without paying any damage to the owners of the land; and the question is, whether the town possessed the right of discontinuing with such a reservation and limitation. The statute of February 8, 1791, *N. H. Laws*, 385, (Ed. 1815) provided "that the inhabitants of any town in this state, at any legal meeting holden for that purpose, may discontinue any highway laid out by order of such town, or the selectmen thereof." No latitude is by this statute given to towns to discontinue highways with any reservation or limitation whatever. They have simply the power given them of discontinuing; and we consider the limitation and reservation expressed in the vote unwarranted by law, and utterly void, and that the vote was operative no further than to effect a discontinuance of the road. The proceedings, therefore, of the town, at their meeting on the 26th of February, 1830, directing the selectmen to open said road, were unauthorized by law, and without effect, and the defendants who acted under them are not protected thereby.

On the discontinuance of a highway the land reverts to the original owner; and an entire new laying out, with all the legal formalities, is required in ordinary cases, to establish it again as a public highway.

The charge to the jury was, therefore, correct.

*Judgment on the verdict.*