## STATE *vs.* NEW-BOSTON.

The charter of a turnpike corporation was repealed by the legislature. Upon an indictment against the town through which a part of the turnpike road was made, for not keeping it in repair subsequent to the repeal, it was *held*, that the town did not become liable to keep the road in repair, in consequence of such repeal.

The charter was repealed in the month of June, A. D. 1837, and from that period until the month of August, A. D. 1839, the road was travelled by all persons who chose to pass over it.

State v. New-Boston.

*Held,* that such use of the road was not competent evidence to be submitted to the jury, either of a dedication of the land by the owners, to the public, for the purposes of a highway, of the usefulness of the road to the public, or of the acceptance of the road by the public as a highway.

INDICTMENT, for not repairing a highway; found at the August term, A. D. 1839, of the court of common pleas for this county.

The case was submitted to the court for decision upon an agreed statement of facts.

The indictment alleges the road to be a common highway in New-Boston, and that said town was by law bound to repair the same, whenever it should become necessary; and that it was broken, uneven, and in great decay, for want of due reparation, and that the town has neglected to put it in repair.

It was agreed that the road described in the indictment was in great decay, and that the town has neglected and refused to repair it. And it was also agreed, that on the 26th day of December, A. D. 1799, the legislature of New-Hampshire incorporated certain persons by the name of " The Proprietors of the Second Turnpike Road in New-Hampshire," and empowered them to build a turnpike road from Claremont to the plain in Amherst. The proprietors organized under the charter, and soon after built the road described in the indictment, which was kept in repair and toll taken thereon by the proprietors until the month of June, A. D. 1837, when the legislature repealed the charter, and the proprietors abandoned the road. During this period, until the month of June, A. D. 1837, the road was travelled and used by the public as a common turnpike road. Since the month of June, 1837, the road has been used and travelled by all who chose to pass over it. Neither the selectmen of New-Boston, nor any committee of the court of common pleas, have ever laid out the road as a common and public highway, nor has it ever been laid out nor dedicated as a public highway in any other manner than as above stated.

It was agreed that if, upon the foregoing facts, the court should be of opinion that the town of New-Boston is liable to repair said road, the town is to be defaulted and fined; otherwise the town is to be discharged.

*Gove,* Attorney General, for the state.

*David Steele, Jr.,* for New-Boston.

GILCHRIST, J. We are not aware that more than four modes of creating public highways have ever been recognized in this state. The statutes of the state point out two of these modes; firstly, by the authority of the selectmen of the different towns; and, secondly, by the court of common pleas, acting through a road committee, or a board of road commissioners. The third mode is by charters, granted by the legislature to individuals, authorizing them to build turnpike roads, and to levy and collect tolls of those persons who travel upon them. The fourth mode is by long use of land by the public for the purposes of a highway, or by dedication of the land by the owners to the use of the public; and this mode is recognized by numerous decisions of this court. *State* vs. *Hampton,* 1 *N. H. Rep.* 25; *State* vs. *Campton,* 2 *N. H. Rep.* 513; *Pritchard* vs. *Atkinson,* 3 *N. H. Rep.* 338, *and* 4 *N. H. Rep.* 9; *Scott et al.* vs. *Wilson,* 3 *N. H. Rep.* 325; *Barker* vs. *Clark,* 4 *N. H. Rep.* 383; *Hopkins et al.* vs. *Crombie et als.,* 4 *N. H. Rep.* 523.

After a highway has been established in any one of these modes, the right acquired by the public in the land over which the highway passes is well settled in this state. This right is only an easement; a right of passage, a power to travel over the land. The public acquire no interest in the soil, except so far as it may be necessary to use it within the limits of the highway, for the purpose of keeping the road in proper repair. *Makepeace* vs. *Worden et als.,* 1 *N. H. Rep.*

16; *Avery* vs. *Maxwell*, 4 *N. H. Rep.* 37 ; *Copp* vs. *Neal*, 7 *N. H. Rep.* 276; *Leavitt* vs. *Towle*, 8 *N. H. Rep.* 97.

A charter, granted by the legislature to individuals, authorizing them to build a turnpike road, vests in the corporation no other nor greater right to the soil than is acquired by the public, when a highway is created in either of the other modes above enumerated. *State* vs. *Hampton*, 2 *N. H. Rep.* 25; *Robbins* vs. *Borman et al.*, 1 *Pick.* 122 ; *Adams* vs. *Emerson*, 6 *Pick.* 57 ; *Tucker* vs. *Tower*, 9 *Pick.* 109. And the same doctrine is held in the courts of New-York. It is said, by the court, in the case of *Hooker* vs. *Utica and Minden Turnpike Co.*, 12 *Wendell* 371, that the title to the land is vested in a turnpike corporation " only for the purposes of a road, and that when the road is abandoned the land reverts to the original owners." Nor is any interest vested in the public in the land over which a turnpike road passes. The public have a right to travel upon the turnpike road, on condition that they pay the tolls which the corporation may lawfully assess.

Neither the public, then, nor a turnpike corporation, acquire any other right to the land than that of using it for the legitimate purposes of a road. There is no substantial distinction between a turnpike road and a common highway, so far as the right of soil is concerned. Indeed, the only difference between them is, that the former, instead of being made at the public expense in the first instance, is authorized and laid out by public authority, and made at the expense of individuals, and the cost of construction and maintenance is reïmbursed by a toll levied by public authority for the purpose. *Commonwealth* vs. *Wilkinson*, 16 *Pick. R.* 175. When a highway is legally discontinued, the public right of passage ceases, the duty of the town to keep it in repair no longer exists, and the owner has his land again, free from the incumbrance. *Hampton* vs. *Coffin*, 4 *N. H. Rep.* 517. And if a road be again required over the same ground by the public convenience, the mode prescribed by the statute must

again be pursued, the land-holders must again be notified, and the proper tribunals must again adjudicate upon the matter, before the public can acquire the right of using the land as a highway, or there must be a dedication of the land to the use of the public for that purpose. *Cheshire Turnpike* vs. *Stevens*, 10 *N. H. Rep.* 137. And the same consequence must follow upon the repeal of a charter for a turnpike road, or upon an abandonment of their rights, or any other voluntary dissolution of the corporation. The right of way during the existence of the corporation, for which the land-holder was paid by the damages awarded him against the corporation, ceases with a repeal of the charter. A contrary doctrine would seem to involve the position, that upon the discontinuance of a road the public do not lose their right of way, unless some distinction exists between the effect of a discontinuance of a road, and of a repeal of a charter, which does not appear to us to be the case. The public, therefore, cannot succeed to any rights of the corporation, for upon a repeal of the charter the rights expire. It would hardly be contended, that upon the discontinuance of a highway, a turnpike corporation, with authority to build a road between the termini of the highway, could occupy the site of the highway for their road, without making any compensation to the owners of the land. Equally difficult would it be to maintain the position, that the public can *inherit* from the corporation the right of way. If this be so, they succeed equally to the right of taking toll of all persons who may travel the road ; and this, too, without any further legislation on the subject—a position which, we think, could be sustained neither by analogy nor by precedent, but which seems to have as much reason to recommend it, as the position that the public succeed to the right of way. Either of these grounds, it is believed, presents difficulties which certainly do not diminish upon examination, and which appear to us insuperable. We are, therefore, of opinion, that the repeal of the charter does not vest the right of way in the

public, and that the town is not liable to keep the road in repair, in consequence of such dissolution of the corporation.

The conclusion to which we have arrived, is fortified by the case of *Commonwealth* vs. *Western*, 1 *Pick.* 136. In that case, a turnpike corporation had laid out their road over or near a part of the county road in the town of Western, in consequence of which that part of the road was discontinued by the court of sessions. The corporation were afterwards released from their obligation to repair the turnpike where it had superseded the county road, and an information was filed against the town for not keeping it in repair. It was held that the road, being discontinued, ceased to be chargeable to the town, and that it belonged to the court of sessions to lay it out anew, or establish a different road, as they should see fit.

But it is contended, that since the repeal of the charter the road has been used a sufficient length of time to evince its usefulness to the public, as a highway ; that a dedication may be presumed from the circumstances of the case ; and that consequently the town is liable to keep it in repair.

Upon the question, as to the presumption of dedication to common use, by the proprietors of land, there has been some difference of opinion, and even a contrariety of decisions as to the proof of such dedication. It seems, however, to be agreed on the one hand, that if a bar, or a written notice of "no thoroughfare," &c., be constantly kept up, the intention of the owner to exclude the public will be sufficiently clear ; and on the other hand, that long user of a way, without any obstacle, at a time when the owner of the soil is in possession, and cognizant of the user, will afford the strongest presumption of a dedication. The material question has generally been, whether the circumstances have been such as clearly to indicate the intent of the owner of the soil to appropriate it to the public use. An express, formal dedication to the public, and an acceptance, either by some public agent, properly authorized, or by long use by the public, would, upon

the authorities, constitute a public highway, although unless there be an acceptance, either express or implied, it seems that the road would not become a highway. *Green* vs. *Chelsea,* 24 *Pick.* 80 ; *Hopkins et al.* vs. *Crombie et al.,* 4 *N. H. Rep.* 523. In the case of *Hobbs* vs. *Lowell,* 19 *Pick. R.* 416, Mr. Justice Morton denies that towns have the power to assent to the grant or dedication of a way—a question which is left unsettled in the judgment of the court in that case, pronounced by Shaw, C. J. It was formerly held, in England, that the assent of the parish was requisite to give effect to the dedication thereof. *Rex* vs. *St. Benedict,* 4 *B. & A.* 447 ; *Rex* vs. *Mellor,* 1 *B. & Adol.* 32 ; *Rex* vs. *Wright,* 3 *B. & Adol.* 681. But it has since been held, that the adoption of the road by the parish is not necessary. *Rex* vs. *Leake,* 5 *B. & Adol.* 462. But whether the powers of parishes in England are or are not analogous to those of towns in this state ; whether towns have or have not the power to give such assent ; and if they have, in what manner that assent may be given, are questions which need not be settled in this case.

So long as the charter remained in force, the road was a public highway, and the public, under certain restrictions and limitations, had the right to use it for such purpose. The corporation were bound to keep it in repair ; and this liability did not depend on the fact, whether the road was useful or unnecessary, or whether there was any travel upon it. The case finds that the road, since the month of June, A. D. 1837, has been travelled by all who chose to pass over it, and also that in August, A. D. 1839, when the indictment was found, the road was in great decay. Whether these facts amount to sufficient evidence of dedication, and acceptance by the public, must be determined from an examination of the cases.

Neither the utility of the road, nor its actual use by the public, are of themselves sufficient ; but there must be either an express dedication, or circumstances from which the assent of the owner can be presumed. It is rather the intention of

the owner than the time of sufferance, which must determine the fact of dedication. 11 *East* 376, *n.* And the dedication contended for must have been made openly, and for a deliberate purpose. *Roberts* vs. *Karr*, 1 *Camp.* 262, *n.* And consent on the part of the owner of the fee, is indispensable to a public right of way. *Wood* vs. *Veal,* 5 *B. & A.* 454 ; *Harper* vs. *Charlesworth,* 4 *B. & C.* 591. In *Jarvis* vs. *Dean,* 5 *Bing.* 447, it was held, that although a certain street was neither paved nor lighted, and led only to the fields, yet as it had been used by the public as a highway for four or five years, and as a public approach to their property was beneficial to the owners of the land, the jury might presume their assent to a dedication of the land to the public as a highway.

Where there had been a frequent change of tenants, coupled with a long, notorious, and uninterrupted sufferance, to which the landlord's steward was privy, although there was no proof that the landlord had ever been in possession, Lord Ellenborough presumed the concurrence of the landlord, and held that notice to the steward was notice to the landlord. *Rex* vs. *Barr,* 4 *Camp.* 16. But where the owner of the soil was bound to permit a qualified passage, user by the public at large for many years was held not to be evidence of a dedication. *Rex* vs. *St. Benedict,* 4 *B. & A.* 447. And the erection of a bar, although it may have been knocked down, rebuts the presumption of a dedication. *Roberts* vs. *Karr,* 1 *Camp.* 262, *n.* It is not sufficient that there is a license merely, to pass over the land : there must be a dereliction on the part of the owners in favor of the public. *British Museum* vs. *Finnis,* 5 *C. & P.* 460 ; *Marquis of Stafford* vs. *Coyney,* 5 *B. & C.* 257.

The period during which a road has been used by the public, may, upon the authorities, be evidence both of an acceptance by the public, and of a dedication. Upon this question the cases are somewhat contradictory. In *Rex* vs. *Hudson,* 2 *Strange* 909, it was held that leaving a way open for

four years would not amount to a gift of it to the public. In the case of the *Rugby Charity* vs. *Merryweather*, 11*East* 395, *n*, Lord Kenyon held, that user by the public for six years was sufficient to presume a dedication of the land as a highway. But in *Woodyer* vs. *Hadden*, 5 *Taunt*. 126, it was held that mere user of a street by the public for nineteen years was not sufficient to prove a dedication. The street was not entirely paved, and Mansfield, C. J., lays stress upon that fact, and says that to support any thing like a dedication, it must be finished as a perfect street. He also expresses his dissent from the opinion of Lord Kenyon, in the 11*th East* 395, although Chambre, J., agreed with Lord Kenyon, and delivered a dissenting opinion in *Woodyer* vs. *Hadden*. The authority of the last mentioned case is also questioned by Holroyd and Best, justices, in *Wood* vs. *Veal*, 5 *B. & A.* 454. Chambre, J., in the opinion referred to, does not disagree with the court upon the general principle, but says that "no particular time is necessary for evidence of a dedication; it is not, like a grant, presumed from length of time. If the act of dedication be unequivocal, it may take place immediately."

The case of *State* vs. *Campton*, 2 *N. H. Rep.* 513, which was the first express judicial recognition in this state of the principle of the dedication of a highway, arose upon an indictment for not building a bridge. The bridge was erected by individuals about the year 1789, and was used by the public without toll, until the year 1820, with only the interval of a year, during which it had been carried away. It was rebuilt by subscription, and kept in repair by the town for about fourteen years, when it was again rebuilt, at the expense of the town. There was no other dedication nor acceptance of the bridge, than such as could be inferred from these facts. In pronouncing the judgment of the court, Mr. Justice Woodbury says: "The true test seems to be, that the bridge, if dedicated to the public, if used by the public, and found to be of public utility, should not continue a burden to the individuals who built it."

" Though the use and repairs of it by the public may have been under a protest against their liability, and for a shorter period than twenty years, the liability is still fixed, if the bridge be not indicted as a nuisance, and be used by the public so long and so much as to evince its usefulness to them."

In the case of *Pritchard* vs. *Atkinson*, 4 *N. H. Rep.* 9, it was held that the defendant's acquiescence in the laying out, making and use of the road for seventeen years, was competent evidence to be left to a jury, as proof of a dedication.

But in *Baker* vs. *Clark*, 4 *N. H. Rep.* 380, it was held, that proof that people in the neighborhood have long been accustomed to pass in a certain way through a close, without showing that the way has been thrown open by the owner of the close, or made or repaired by the public, is not sufficient to establish a public highway. And Richardson, C. J., in remarking on the length of time necessary for a dedication, says, that " much depends on the circumstances. When an individual deliberately throws open a road to the public, and permits it to be travelled by all without interruption, we have no doubt that in much less time than twenty years these facts might be left to a jury as evidence of a dedication."

In this case, the evidence both of a dedication and of an acceptance, is derived from the use of the road for two years subsequent to the repeal of the charter, by all persons who chose to travel upon it. But the persons who chose to travel upon a road so much out of repair that a proper occasion existed for the interference of a grand jury, could hardly be so numerous as to evince the utility of the road. Whether the road, if in repair, would be useful to the public, we are not informed. If any inference can be made from the repeal of the charter, it would be, that the travel on the road was not sufficient to enable the corporation to take tolls enough to keep the road in repair. And we are of opinion, that the circumstances of this case are not competent to be submitted to a jury, as evidence either of the utility of the road as a

highway, of the acceptance by the public of the land for the purposes of a highway, or of a dedication by the owners. That the owners knew the land was travelled over to some extent, is very probable. But the travel was not so great as to show that deliberate intention to dedicate, which the authorities require, nor did it continue a sufficient length of time. The delay in shutting up the road by fences across it, may be reasonably accounted for, without resorting to the ground of a dedication. The owners might possibly have supposed that a road would again be laid out over the same ground, and that damages would be awarded them ; and as various reasons might exist for the delay, there is no ground, in the absence of evidence, for presuming the intention to dedicate.

In all cases where mere lapse of time is offered as evidence of a fact, it is extremely difficult to fix upon a particular period which shall be considered either as conclusive, or as competent evidence to be submitted to a jury. The strength of the evidence often depends more upon the attending circumstances, than on the length of the time. After many years, even such a user as this might have ripened into a right, and the consent of all the world might perhaps be presumed. But the fact that no repairs have been made on the road, the feeble character of the evidence of the public travel, and of the utility of the road, and the suggestions which have been made against presuming an intention by the owners to surrender their land, justify us in the conclusion that this is not a highway which the town are bound to repair.

*Town discharged.*