# D. Tewksbury *vs.* M. Bucklin.

It is the occupier, and not the owner of a close, who is bound to keep the fences in repair.

Where A and B own adjoining closes, the partition fence between which is not divided, each is bound to keep his cattle on his own land at his peril. But if C, with A's assent, keep his oxen in A's pasture, and has the custody of them there, and they stray into B's close, C and not A is to be considered *quoad* the oxen as the occupier of A's close, and is liable for the damage. But it is otherwise if A has the custody of C's oxen, while they are in his close.

This was an action of trespass, for breaking and entering the plaintiff's close in Grafton, and with cattle doing damage there.

The cause was tried upon the general issue at the September sittings, 1834, when it appeared, that the plaintiff was seized and possessed of the *locus in quo*, and that the defendant was seized and possessed of another close adjoining that of the plaintiff, and that on the 20th July, 1830, two oxen, which were then kept in the close of the defendant, broke into the close of the plaintiff, and did damage there.

It appeared that the oxen belonged to James Bucklin, and that they were kept in the close of the defendant with his assent.

The defendant offered to prove that his close was purchas-

ed for the use of himself, James Bucklin, and another person ; <span style="float:right">Tewksbury<br>*vs.*<br>Bucklin.</span> that the land had been conveyed to him, in trust for all for whom it was purchased ; and that the oxen of James Bucklin were not in his custody on the land, but that James kept them there himself.   This evidence was rejected by the court, and a verdict taken for the plaintiff, subject to the opinion of the court upon the foregoing case.

*Bell*, for the defendant.   The question is, whether the plaintiff can maintain trespass for his damages, under the circumstances.

The statute enacts, that the owners or occupants of lands, under improvement and adjoining, shall contribute equally in building and repairing the partition fence between them, so long as they shall continue to improve.

And provision is made for a division of the fence on the application of either party—and after this is done, either may build the delinquent's part at his expense.

It is further provided, that when any damage shall be done to any person whose fence is insufficient, and such damage shall happen through such deficiency, the person sustaining such damage shall not recover any damages therefor.

This court has already decided that this clause in the statute has always been construed to bar any action for damages done in a close by cattle, when the cattle broke into the close through the insufficiency of fences which the owner of the close was bound to keep in repair.   4 *N. H. R.* 36, *Avery* vs. *Maxwell.*

In this case, the plaintiff and defendant were owners of adjoining closes, under improvement, with a partition fence insufficient and undivided, and the cattle were rightfully in the defendant's close.

The question is, whether, under the circumstances, this partition fence was one which, in the sense of the law, it was the duty of the plaintiff to build and maintain ?   If it was, the plaintiff certainly cannot maintain this action.

The principle of the statute is, that no one shall take advantage of his own wrong.

It was the plaintiff's duty to contribute equally with the defendant in building and repairing the partition fence between them. But the plaintiff has not done this—he has brought his suit against the defendant for damages done by cattle rightfully on the defendant's enclosure, and breaking into the plaintiff's enclosure through insufficient fences, which it was his duty, equally with the defendant, to build and repair.

Can this be distinguished in principle from the case of *Avery* vs. *Maxwell,* already decided? We think not. We think that the principle is the same, and that the decision must be the same.

The statute has wholly changed the common law as to the rights and duties of the owners of adjoining lands under improvement, and therefore the rights, duties and remedies here must be sought under the statute, and not under the common law.

The principle of the statute is, that when the cattle that do damage are rightfully where they are put, so far as regards the owner, and the damage happens through the fault of the plaintiff, no action will lie. It would not so lie at the common law. Where the plaintiff's act, or omission, is the cause of the injury he suffers, he must suffer without complaint and without redress by law, because he has the means of redress in his own hands. The damage in such case is the result of his own negligence or fault, and is *damnum absque injuria,* in the eye of the law.

*Quincy,* for the plaintiff. The case finds that there was no division of the fence between the parties. We therefore contend that both parties must take care of their cattle, upon the principle of the common law. When the fence has never been divided, each party is bound to keep his cattle

upon his own land. 6 *Mass. R.* 90; 1 *Cowen* 79, *note;* 4 *N. H. R.* 36.

GREEN, J., delivered the opinion of the court.

It has been urged in the argument, that this action cannot be maintained, because the damage happened through defect of fences which both parties were equally bound to repair; and the case of *Avery* vs. *Maxwell* has been cited to sustain this ground of defence. But that case does not apply here. That was a case where the animal broke from the highway into the plaintiff's enclosure, which is governed by a different rule from cases where animals break from the enclosure of the owner into an adjoining close of another person. 4 *N. H. R.* 515; 6 *Mass. R.* 96; 1 *Cowen* 87, *in the note.*

Every man is bound to fence against every thing that may be lawfully in the highway. But where two men own adjoining closes, with an undivided partition fence, which both are equally bound to keep in repair, each is bound to keep his cattle on his own land at his peril.

In this case, it did not appear that the partition fence had ever been divided—either party, then, who put cattle into his close was bound to keep them there. 5 *Greenleaf* 356, *Little* vs. *Lathrop.*

But it is the occupier of a close who is bound to keep the fences in repair, and not the owner. 4 *D. & E.* 318, *Chatham* vs. *Hampson;* 2 *L. Raymond* 804, *The Queen* vs. *Bucknall;* 3 *D. & E.* 766, *Rider* vs. *Smith.*

And the occupier of lands where there are no fences is bound by the same principle to keep the cattle he puts there upon the land.

The question was, then, who was to be considered as the occupier of the defendant's close, in relation to James Bucklin's oxen? If the defendant took the oxen to keep for the owner, and had the custody of them, he must be considered as the occupier of the close, and bound to keep them upon the land. But if James Bucklin kept the oxen there him-

self, and had the control and custody of them while there, he is to be considered as the occupier of the close *quoad* the oxen, and was bound to keep them upon the land. And, in that case, it is James Bucklin, and not this defendant, who is responsible for any damages the plaintiff may have sustained.

We are, therefore, of opinion that the evidence which was rejected at the trial ought to have been received, and for this cause there must be

<div align="right">

*A new trial granted.*