## WOOLSON v. NORTHERN RAILROAD.

A railroad corporation is not liable for damages done to cattle which escape from the highway to the railroad, nor through fences between the railroad and land of the owner of such cattle.

The plaintiff's calves escaped from his pasture into an adjoining highway, which was intersected by a railroad, in land not owned by him, and they passed along the highway in the direction of the plaintiff's residence, until they reached the place where it was thus intersected, and thence went upon the track through "gaps, openings and defective places" in the fences and cattle-guards there constructed, and were killed by the defendants' engines. *Held*, that the corporation was not liable.

CASE, to recover the value of three calves of the plaintiff, killed on the 17th day of November, 1847, by the defendants' cars, on that part of their railroad situate between Haile's Point and Horse Shoe Pond, in said Concord. The writ contains three counts. The first alleges that the calves got upon the track and were killed, through the negligence of the defendants in permitting the fences and cattle-guards on that portion of their road to be so insufficient, defective and out of repair, that by reason thereof the calves entered on the track and were killed. The second alleges that the calves entered on the tract and were killed, by reason of the neglect of the defendants to erect and maintain sufficient fences and cattle-guards on that part of their road. The third alleges that the calves were killed by reason of the negligence of the defendants, in managing and conducting their engines and cars along that part of their railroad.

It is agreed that the plaintiff's calves were killed by the defendants' cars, at the time and place specified in the declaration.

It is agreed that Haile's Point road is a public highway in the town of Concord, and that the plaintiff's field, in which the calves were kept on the 17th of November, 1847, was situate upon said Haile's Point road, but did not adjoin the defendants' railroad, but that the defendants' rail-

road crossed said highway between said field and the residence of the plaintiff.

It is also agreed that the fence and cattle-guards, on the north side of said highway, at its intersection with said railroad, on said 17th of November, were and for a long time had been so insufficient, defective and out of repair, that cattle might and frequently did pass from said highway, over and through said cattle-guards and fence, to that part of the track of said railroad where the calves were killed.

It is also agreed that on the evening of November 17th, 1847, the plaintiff's calves escaped from his field, situate on said highway, into said highway, and from thence on their course towards the plaintiff's residence, in consequence of the insufficiency and defectiveness of said fence and cattle-guards, escaped through the gaps, openings and defective places in said fence and cattle-guards, to the track of the defendants' railroad, where they were killed by the cars.

It is further agreed that the only way in which the plaintiff's calves could pass from his buildings to the field, in which they were kept on said 17th day of November, or from said field to said buildings, was over and through said highway ; that the plaintiff had been accustomed and was necessarily compelled to drive his calves and other cattle to and from said field, over and along said highway, past the said defective fence and cattle-guards, and that said highway was a common thoroughfare for the passage of the cattle of the citizens of that part of Concord to and from their fields and pastures.

If the plaintiff was entitled to recover, the amount of damages was fixed at twenty-five dollars.

The case was submitted to the decision of this court upon the foregoing agreed statement of facts.

*Perley* and *Fowler*, for the plaintiff.

*Nesmith & Pike* and *Pierce & Minot*, for the defendants.

WOODS, J.  It is provided by the Revised Statutes, ch. 142, §§ 6, 7, that if any railroad corporation neglect to keep a sufficient fence on each side of the railroad, any person against whose land such fence is insufficient, may require the corporation to build such fence, or pay the expense of so doing, with a penalty, except in cases in which the corporation may have agreed with the owner of such land for building and maintaining such fence.  In such case, the corporation may, upon the neglect of the land owner, build the proper fence, and recover of him the necessary expense of so doing.  Such is the substance of the statute law applicable to this case, so far as the statutes have imposed any peculiar duty in this regard upon railroad corporations.

The object of this statute was, in the first place, to settle the burden of the partition fence between the corporation's land and that of the adjoining proprietor upon the former, and to point out the means by which the corporation might be compelled to build or pay for building such fence.  And secondly, to enable the corporation to make an agreement with the proprietor to support the fence, and to point out the course by which he might be compelled to keep his engagement, when the corporation might deem the safety of its property and of the passengers and freight upon the road to require the fence to be built or repaired.

The statute relates to matters exclusively between the railroad corporation and the owners of land bordering upon the road.  It imposes no duty in which the public in general have an interest, or of which the public have any means to enforce the discharge.

Ordinarily and aside from any statute, we apprehend that it is not incumbent upon any individual or corporation to fence his ground against the highway, nor is any one liable for injuries to cattle that, in passing rightfully over high-

ways, stray from them by reason of the insufficiency or want of such fences, and become lost or damaged. Such fences the land owner is supposed to build for his own protection against the casual and unavoidable incursions of cattle, rightfully driven along the public way, and may, perhaps, be necessary, moreover, to enable him to sustain an action for damages of such a nature against the owners of such cattle. But as to this, it is unnecessary to give any opinion in this case.

We are not aware of any principle of law which imposes upon railroad corporations more onerous or different duties, in this respect, from those which pertain to other corporations or to individuals. The greater danger of injury to the animals trespassing upon the railroad than that which they incur in trespassing upon a field or a garden, cannot vary the principles of law. The owner of a field who does not fence it, cannot, by the old law, complain that cattle, lawfully driven along a way leading through his crop, " snatchingly" devour his grass and corn. But the license was never so far deemed a right of the owner of cattle to suffer and permit them to wander into the field, that the proprietor became chargeable with the damages which incidentally befal the cattle in such excursions. *Avery* v. *Maxwell,* 4 N. H. Rep. 36; *Tewksbury* v. *Bucklin,* 7 N. H. Rep. 518.

The plaintiff's field is not so situated, in relation to the defendants' railroad, as to authorize him, under the statute, to require the defendant to construct any fence. It does not appear that the cattle were rightfully upon the highway. If they were, it was not the duty of the defendants to keep them there; and even if it was not a trespass, on the part of the plaintiff, to suffer his cattle to go upon the railroad of the defendants, the excusable straying must be regarded as at the risk of the owners, and not of the corporation.

It does not appear that any corporate duty was neglect-

ed, or that the ordinary duty of individuals required of the owners of the railroad any thing more than was done.

*Judgment for the defendants.*