Putnam, J.
The principal question intended to be presented in this case is, whether the people of this commonwealth have a right to use the lands for the purpose of grazing, which have been laid *29 out as highways. I hold it to be clear that tne public have no other right, but that of passing and repassing ; and that the title to the land, and all the profits to be derived from it, consistently with, and subject to, the right of way, remain in the owner of the soil. The owner may maintain trespass for any injury to the soil, which is not incidental to the right of passage acquired by the people (1). The land covered by a highway may be recovered in ejectment (2). Lord Mansfield, in delivering the opinion of the Court in the case last referred to, cites with approbation from 1 Roll. Abr. 392, that the king has nothing in a highway, but a passage for himself and his people ; but the freehold and all the profits belong to the owner of the soil. His lordship adds, “ so do all the trees upon it, and the mines under it, which may be extremely valuable; ” and Mr. Justice Foster observes, “ the owner of the soil has all above and under ground, except only a right- of passage for the king and his people.”
This has been the settled law, certainly, ever since the time of Edw. 4. The only case, which seemed to the contrary, was that of Sir Bouchier Wray, mentioned in the last-cited case, which Lord Mansfield said was so loosely remembered, and so imperfectly reported, as to deserve no regard. The old authorities are cited by Viner, Chimin priv. B. and particularly 8 Edw. 4. 9. pl. 7, where this was held to be the law by all the justices.
These principles have also been recognized in this Court. In the case of Perley vs. Chandler (3), Chief Justice Parsons states the opinion of the Court, that every use to which the land may be applied, and all the profits which may be derived from it, consistently with the continuance of the * easement, the [ *35 ] owner can lawfully claim. And in a late case it was held, that one might recover the land, subject to the way, in a writ of entry (4).
It is not lawful, therefore, for the public to put their cattle into the highway to graze. For wherever one would justify taking the property of another, in virtue of a license or of a way, he must plead and prove that he pursued the authority, or used the way as a way, and not for any other purpose (5)." So in 22 Edw. 4. 8. pl. 24, it was said by one of the Court, that “ if one drive a herd of cattle along the highway, where trees, or wheat, or any other kind of corn is growing, if one of the beasts take a parcel of the corn, if it be against the will of the driver, he may well justify; for the law will intend that a man cannot govern them at all times as he *30 would; but if he permitted them, or continued them, (yc., then it is otherwise.”
In the case at bar, the defendant put his cattle into the way to graze, and not merely to pass along the way. All the injury which is necessarily done by the passing, all the involuntary damages done by the traveller, must be borne by the owner of the soil. B.ut he is entitled to damages for the excess.
It is said, however, that the common law is altered by several acts, to which we are referred. The act of 5 Will. & Mar. c. 9. (6) regulates the mode in which proprietors and freeholders may occupy the common lands belonging to the town. This act has no reference to highways. It requires that all swine, going at large on the commons, shall be sufficiently yoked from April 1st to October 15th, yearly, and ringed in the nose all the year, under a penalty. The object of the act was to prevent damage to cornfields, or other improved and common lands, by horses, neat cattle, sheep or swine, going at large. Proprietors only might let horses run to feed on common land. The horses are to be entered with the clerk, and the regulations are enforced with penalties. It was required by the colonial law of 1646 that cattle, which fed in open common without constant keepers, should be branded (7).
[ * 36 ] * The statute of 1788, c. 44., requires that horses, which shall be suffered to go at large, shall be fettered lrom the 15th of April to the 1st of November; and that the owner of any such horse or horse kind, that shall be found going at large on the common or ways in any town, not being sufficiently fettered, shall forfeit, &c., to be recovered by an action of debt. In this statute, for the first time, commons and ways are mentioned together. There were many regulations respecting cattle going at large on the commons; but here they are coupled with ways. The common lands were frequently left open, and it is not strange, that in process of time they should be inaccurately regarded as ways. By the statute last cited, towns may grant liberty for horses to go at large and unfettered, between the 15th of April and the 1st of November ; in which cases the forfeiture is not to be incurred. The legislature seem not to have intended to affect trespasses as at common law. The statute of 1799, c. 61., allows the inhabitants of towns to order that neat cattle, horses or horse kind, mules or asses, shall not go at large, without a keeper, under a penalty, &c. Hence it was argued, that the legislature admit, or take it as a settled custom or law, that horses may be suffered to go at large on the highways, and of course feed upon the grass there growing.
*31 We have seen how clear the common law is upon this subject, and that it has been adopted here. Now, if the legislature intended such a material alteration as has been contended for, is it to be supposed that they would not have expressed themselves clearly, and not merely by doubtful implication ? But did they mean to touch rights protected by the common law ? I may ask another question ; could they do so, if they were disposed (which is a case never to be supposed), without making compensation to the owner ? Take the case of a fruit-tree standing in the road, but in a situation to afford a convenient shade to the traveller, an ornament and not a nuisance to the way, and yielding an annual profit to the owner of the soil. Now, the legislature * might, if they [ * 37 ] thought it expedient, provide by law that, for the future, the soil of all highways that should be laid out should be vested in ■ the public, and compensate the owners accordingly. But what constitutional right would they have to divest the owners of the soil of rights remaining, in respect to ways theretofore laid out ?
Take the case of a mine under the way, which the owner of the soil may profitably and conveniently work, consistently with the free passage of the people over it. Clearly before the statutes referred to, the property remained in the owner of the soil. Can he be divested without compensation ? If the legislature can divest him of the trees and herbage, I see no reason why they may not do the same as to all profits, and rights, and property under the way. We do not believe that the legislature would do this, if they had the power. There is no inducement to it. The accommodation desired by the public is to pass and repass with ease. So it is expressed in the colony law of 1639: “All country highways shall be such as may be most easy and safe for travellers ” (8). The pasturage never made any part of the inducement or reason for laying out highways. And upon the discontinuance of a highway, it never was doubted that the soil belonged to the former owner or his heirs, discharged of the easement.
Upon consideration of the whole matter, we are of opinion that the common law doctrine has been adopted in this commonwealth, and continues unaltered by statute. The defendant therefore cannot justify turning his cattle into the highway for the purpose of grazing; he having no other right there but of passage.
The remaining question is, whether the owner of land, adjoining a highway, unfenced, may maintain trespass against one, who had put his cattle into the highway to graze, because the cattle escaped into the adjoining land, and there ate the plaintiff’s grass. And we *32 are of opinion, on the authority of the case of Dovaston vs. Payne, before cited, and the reason and law applicable to the [ * 38 ] case, that * such action may well be maintained. In the case referred to, the defendant pleaded that his cattle, being in the highway, escaped into the plaintiff’s close for want of a sufficient fence. And it was held clearly a bad plea ; for the defendant ought to plead and prove that they were passing the highway, and that the defendant was using the same as a highway, and not otherwise. So is the pleading in Herne, 828. Defendant said, “ he was driving his cow along the highway, from which she escaped into the plaintiff’s close for want of fence; and that the defendant followed her and drove her back ; and. that the cow casually and snatchingly, and against the will of the defendant, sparingly did bite the grass while returning,” &c.
In Dovaston vs. Payne, Justice Buller states the question, whether trespass or not, to depend on the fact whether the defendant was passing or using the road as a highway, or whether the cattle were in the road as trespassers.
This depends upon a rule of the common law well settled, that a man is not obliged to fence against any cattle, but such as may be rightfully on the adjoining close (9). The statutes of this commonwealth have not altered that rule ; and closes, which are adjoining the highways, are left as at common law.
Now, the cattle of the defendant were not rightfully in the highway for the purpose of grazing. If they had escaped from the owner, without any default on his part, he could well have justified. But in such case, he must plead that the beasts were in his view, and escaped, and that he made fresh pursuit (10). If a man will leave his land unfenced against the highway, he must submit himself to bear all the casual damages which may arise involuntarily on the part of travellers. But those who use highways are not to convert the right of passing into a right to take the herbage, which b< longs to the owner of the soil (11).

Defendant’s pleas in bar adjudged bad.

 2 Strange, 1004, Lade vs. Shepherd.

 1 Burr. 143, Chester vs. Aker &* Al.

 6 Mass. R. 451.

 13 Mass. R. 256, Alden vs. Murdock

 2 H. Bl 527, Dovaston vs. Payne.

 Ancient Charters, &c. 272.

 Ibid. 63.

 Ancient Charters, &c. 126.

 6 Mass. Rep. 99, Rust vs. Low.

 Fitz. N. B. 128. Note a.

 [Commonwealth vs. Peters, 2 Mass. 127. —Fairfield vs. Williams & Al. 4 Mass 427. —Tippets vs. Walker & Al. 4 Mass. 595. —Alden vs. Murdock, 13 Mass. 259. —Robbins vs. Boman, 1 Pick. 122. —Ed.]