## DANIEL AVERY *versus* HOUGH MAXWELL.

The owner of a close can sustain no action for damage done by horses or cattle breaking into his close through defects in the fences which he is bound to repair : provided the horses or cattle so breaking into his close were rightfully on the adjoining land. But if they were not rightfully on the adjoining land, he may sustain an action for their breaking into his close although they broke through insufficient fences which he was bound to repair.

No man has a right to turn his horses or cattle into the highway to graze except in those parts of it where he is the owner of the soil.

And if any person turns his horse into the road where he does not own the soil, and the horse escape into an adjoining close through defect of fences which the owner of the close is bound to repair, the owner of the horse will be liable for the damage.

THIS was an action of trespass for breaking and entering the plaintiff's close in Gilmanton, and with a certain horse eating up and destroying the plaintiff's grass.

The cause was tried here upon the general issue at September term, 1824, when it appeared in evidence, that the *locus in quo* was situate adjoining a public highway, and that the defendant's horse, being suffered by him to go at large upon said highway, strayed therefrom and entered the said close and did the injury of which the plaintiff complained.

The defendant then offered to prove that the horse at the time he so entered said close was fettered with sufficient fetters, and that he escaped from the highway and entered said close by reason of the insufficiency of the plaintiff's fence. But the court being of opinion that these facts, if proved, were not in law an answer to the action, directed a verdict to be taken for the plaintiff subject to the opinion of the court upon the foregoing case.

*Lyford*, for the plaintiff.

*Walker* and *Woodbury*, for the defendant.

RICHARDSON, C. J. At common law the owner of a close was not bound to fence against an adjoining close unless by force of a prescription ; but he was at his peril

Avery
*v.*
Maxwell.

to keep his cattle on his own close and to prevent them from escaping. And if they escaped they might be taken on whatever land they were found damage feasant : or the owner was liable to an action of trespass by the party injured. 6 Mass. Rep. 90, *Rust* v. *Low & a.* ; 1 Cowen, 79, *note a.*

But our statute, entitled " an act relative to common fields and regulating fences," sec. 9, enacts " that where any damage shall be done to any person whose fences are insufficient and such damage shall happen through such deficiency of fence by swine yoked and ringed according to law, horses fettered and other creatures not prohibited from feeding on the highways and commons, the person sustaining such damage may not impound the creatures so doing damage, nor shall he recover any damage therefor." This clause in the statute has always been construed to bar any action for damages done in a close by cattle, when the cattle broke into the close through the insufficiency of fences which the owner of the close was bound to keep in repair. And as the defendant's horse in this case broke through a fence between the plaintiff's land and a public highway, it is clear the plaintiff was bound to keep the fence in repair.

There is however another principle of law which must be examined in relation to this case. It is well settled that the owner of a close is only bound to fence against creatures, which are rightfully on the adjoining land. 6 Mass. Rep. 99.

It therefore becomes necessary to determine whether the defendant's horse was rightfully on the highway when he broke into the plaintiff's close ?

We have decided that the public has only an easement, or right of passage in the highways laid out through the land of individuals. 1 N. H. Rep. 16, *Makepeace* v. *Worden & a.* The title to the land and all the profits to be derived from it consistently with the right of way remain in the owner of the soil. 6 Mass. Rep. 454, *Perley* v. *Chandler.* 2 H. Bl. 527, *Dovaston* v. *Payne.*

And at common law it is well settled that no man can justify turning his cattle or horses upon the highway to graze, unless it be upon a part of the highway which is his own soil and freehold, or of which some other person owns the soil from whom he has a license. 2 H. Bl. 527, *Dovaston* v. *Payne*; 16 Mass. Rep. 33, *Stackpole* v. *Healy*.

But it is contended that the common law is in this respect altered by our statute of January 14, 1795, entitled "an act to prevent damage being done by horses, mules and jacks," which prohibits horses and mules from going at large on highways and commons without being fettered with good and sufficient fetters, under a penalty. It is urged that as horses are by this law prohibited from going at large without fetters, it is by implication a license to permit them to go at large with fetters. But admitting that the legislature has the power to authorize one man to turn his horse to graze upon the land of another, which is very questionable, still it would be a forced and unnatural interpretation of this statute to construe it to give a license of that nature. Every man has a right to turn his horses into the highway to graze, where he owns the soil over which the highway is laid, and this statute was intended to regulate the exercise of this right and not to give any new right. In Massachusetts a similar statute has been construed to give no new right. 16 Mass. Rep. 36.

It is also contended in this case that the common law is changed by the ninth section of the statute of February 8, 1791 which we have before recited and which declares that when any damage shall be done to any person through the insufficiency of his fence by horses fettered and other creatures not prohibited from feeding on the highways and commons, no action shall be sustained for the damage. 1 N. H. Laws, 404. But this clause in the statute cannot be construed to give a right to one man to turn his horses to feed upon the land of another. It admits a much more reasonable and natural interpretation. We have before stated that at the common law every

man has a right to turn his cattle upon the highway to feed, wherever the soil, over which it runs, is his own, and that the statute of January 14, 1795, 1 N. H. Laws, 405, was intended to regulate the exercise of this right in relation to horses, mules, and jacks. The true meaning of the 9th section of the statute of February 8, 1791, is, that when horses rightfully at large upon highways and fettered break into the enclosure of another through defects in the fences, the owner of the close shall maintain no action. Thus if my neighbor at a proper season of the year turns his horse fettered upon the highway, where it runs over his land, to graze, and the horse breaks into my close by reason of a defect in my fence and do damage I can have no remedy. But if he thus turn his horse upon the highway between the last day of November and the last day of March and the horse breaks into my close, the owner would be liable, although my fence was insufficient and although the horse broke from the highway where it ran through my neighbor's land, because at that season horses are prohibited from being at large by statute on highways, and therefore cannot rightfully be there. So if I turn my horse upon the highway to graze there upon my own soil at any season of the year without fetters and he break into the close of my neighbor, I shall be liable, although my neighbor's close was without any fence, because my horse was not rightfully upon the highway without fetters.

And if I turn my horse into the highway to feed on my own soil there, I am bound to keep him upon my own soil, and if he escape into a part of the highway which runs through the land of my neighbor, and there feed, it is a trespass for which I am liable, and *a fortiore* if my horse being thus unlawfully on my neighbor's soil in the highway break thence into his enclosure I shall be liable, whether his fence were sufficient or not. Such in our opinion is the true meaning of this section of the statute. It was not intended to give to any the right of using the

highway as a pasture, except the owners of the soil, but the object of it was to compel the owners of lands adjoining highways to fence against every thing which might be lawfully in the highways.

These principles are easily applied to the case now under consideration. The defendant offered to show that the horse was duly fettered and at large upon the highway and that he escaped thence into the plaintiff's close through a defect in the fence, but he did not offer to show that the soil of the highway, whence the horse escaped, was his soil. The horse then cannot be considered as rightfully in the highway and the plaintiff was not bound to fence against him.

*Judgment on the verdict.*