SAMUEL LORD *versus* WILLIAM WORMWORD & al.

The cattle of one man are not lawfully upon another man's land, unless by consent of its owner or of some one having an interest in it, even if it be unfenced, and they pass there directly from the highway, upon which they were permitted to go at large by vote of the town.

Although in such a case the recovery of damages may not be allowed by the statute, the landowner may keep them off by sentinels or guards, and their owner would have no right to complain.

If cattle being thus wrongfully upon land, pass therefrom to and upon the plaintiff's adjoining unfenced lot, not bordering upon the highway, he may maintain trespass therefor against their owner, for he was under no obligation to fence against them.

THIS is an action of trespass *quare clausum,* and the following are the facts agreed. The plaintiff's close is a tract of salt marsh ; and the defendant's cattle passed from the highway across a tract of uncultivated land, the same being woodland owned by one Dependance Wells, which is unfenced ; thence across a tract of salt marsh owned by one Doyle, unfenced, to the land of the plaintiff, also unfenced.

The town of Kennebunk at its previous annual meeting, " voted that neat cattle be allowed to go at large in school district, No 4." The highway referred to and all the closes are in that school district.

The questions submitted are: — Were the cattle lawfully going at large in the highway, in school district No. 4? If so, were they lawfully on the close of said Wells? If so, could they lawfully cross the close of said Doyle, and thence to the close of the plaintiff, where the trespass was committed?

If the defendants' cattle were trespassing, the defendants are to be defaulted. If not, the plaintiff is to become nonsuit.

*D. Goodenow* and *Dane, Jr.,* for defendants.

In the establishment of a highway, the herbage is taken for the public, because it is placed in a condition to be of no value to the owner. It is compensated for in the estimate of his damages. The vote of the town, under the authority of the State, was therefore valid and effectual. It was manifestly the intention of the Legislature to protect the owners of cattle so going at large, not only against all *forfeitures,* but all *damages* in actions of trespass. Else the privilege would have been a poor one indeed.

By the common law of Massachusetts and Maine, the owners of improved land bordering on the highway are bound to *fence* it and *keep it legally fenced* at their *peril.* Or they will not be entitled to recover damages in trespass, against the owners of cattle lawfully in the highway. The common law of England on the subject, if ever adopted, was modified and adapted to the condition of this country. Blackstone says the " common law of England, as such, has no allowance or authority" in our American plantations, and he gives the reason, because they were obtained by " conquest and driving out the natives." The laws of the conquered remained till altered by parliament or some colonial Legislature, or by *general consent.* 1 Bl. Com. 108. It would not be necessary that such *general consent* should extend beyond the limits of a single State to make it *lex non scripta,* in that State. This country has been

settled long enough to have a common law of our own, and we have such upon many subjects, different from the common law of England, and adapted to our condition. A large uncultivated country sparsely peopled might require a very different law in relation to *cattle* and *fences* from a small country highly cultivated with a dense population.

The colony law of 1662, ch. 19, § 8, left the owners of land *unfenced* without any remedy, for damages done by cattle " any other law, custom or usage to the contrary notwithstanding." From this a common law has arisen in Massachusetts and Maine, different from the common law of England. It has from that time to the present, been the *custom* to fence *cultivated* lands bordering on the highway. And of this *general custom* the Court will take notice, as a part of the law of the land.

It is true, in *Rust* v. *Low*, Parsons, C. J. says, the colonial statutes *expired* with the repeal of the first charter. They were not repealed; the principle has ever since been acted upon by general consent, the same exigencies existing after the repeal of the charter as before. What makes *common law?* *General consent.* Lord Ch. Just. Wilmot has said, "The statute law is the will of the Legislature in writing; *the common law is nothing else but statutes worn out by time.* All our law began by consent of the Legislature, and whether it is now law by *usage* or *writing* is the same thing." 1 Bl. Com. p. 74, note 7.

All the colony laws, the province laws, the statutes of Massachusetts and Maine, as well as the conduct of the whole people, are in harmony with the principle for which we contend. If any judicial decision has been in conflict with it, it has remained as an *abstraction*, and has not been acted upon by the people. *Town* v. *Dodge & al, Potter* v. *Jewett,* and *Dodge* v. *Cross,* reported by Dane, ch. 66, art. 1, § 1.

Some Judges in their decisions, seem to have rested very much on the *ancient* and general principle, which required the owner of cattle *to keep them at his peril.* And some very much on the other general and more *modern principle,*

which requires the owner or occupier of land to keep it *enclosed with legal fences at his peril.* Dane, ch. 66, art, 1, § 1.

The reason of this conflict in the decisions was this: Some of the Judges adopted the common law of *England,* and the other Judges adopted the common law of *Massachusetts.*

In this case there is no ground to impute fault to the defendants. They were not bound to make any part of the fence, nor had they the right to do it, nor had they any power to compel others to do so.

If the owner of lands adjoining the highway will not fence his lands, he *consents* that all cattle lawfully in the highway shall run upon them.

The defendants' cattle therefore were lawfully on the close of Wells, and if Doyle wished to keep them from his land he should have made a fence. But not having made any, he *thereby* must be considered as *consenting* that they should run on his land. The defendants' cattle were then *rightfully* on Doyle's land and the plaintiff was bound to fence against them *at his peril.* He could drive them away, or keep them off by fences, but could not maintain *trespass* against the owners.

The many provisions in our law as to fences, show that the *law* is not regarded by the Legislature as a *fence.* It is most remarkable that we should have so many provisions requiring fences, if in fact every man is bound by law to take care of his own cattle, and keep them at all times from the lands of other persons.

The doctrine in *Stackpole & al.* v. *Healey,* 16 Mass. 33, was a surprise upon the profession and the public. The people have continued to fence on the highways the same as before.

The provision in the statute of 1834, ch. 137, § 3, was only in affirmance of what we contend the law was before, in relation to fences, and hence there was no necessity for incorporating it in the Revised Statutes. The same also is the case with the statute of 1821, ch. 128, § 6.

In *Gooch* v. *Stephenson,* 13 Maine, 377, Ch. Jus. Weston says, " Lands in this country cannot be profitably cultivated, if at all, without good and sufficient fences. To encourage

their erection, it is undoubtedly competent for the Legislature to give to the owners of lands thus secured, additional remedies and immunities." This was a case between adjoining owners, and rested upon the statute of 1834.

The point that we have a common law in Massachusetts and Maine, on this subject, different from the common law of England, we respectfully contend, has not been duly considered by the Courts.

*Bourne,* for plaintiff.

WELLS, J. — The plaintiff's close is a tract of salt marsh, not fenced, the cattle of the defendants passed from the highway across a tract of woodland owned by Dependance Wells, and not fenced, thence across a salt marsh, not fenced, belonging to one Doyle, to the close of the plaintiff. The cattle, by a vote of the town of Kennebunk, were allowed to run at large in the highway, from which they passed on to the land of Wells.

At common law the tenant of a close was not obliged to fence against an adjoining close, unless by force of prescription, but he was, at his peril, to keep his cattle on his own close. *Rust* v. *Low,* 6 Mass. 90 ; *Little* v. *Lathrop,* 5 Greenl. 356.

The rights of the parties are to be determined by the provisions of the Revised Statutes, c. 30, § 6. This section provides a remedy for the injury done to the owner of the close, by an action of trespass or by distraining the beasts, " provided that if the beasts shall have been lawfully on the adjoining lands, and shall have escaped therefrom, in consequence of the neglect of the person, who had suffered the damage, to maintain his part of the partition fence, the owner of the beasts shall not be liable for such damage."

The law now in force, is different from that of 1821, c. 128, § 6, and 1834, c. 669, § 3.

To sustain the defence of this action, it must appear that the cattle were lawfully on the adjoining lands, that they escaped through the neglect of the plaintiff to maintain his part

of the partition fence.   It is not shown that the defendants had any interest in the close of Doyle, or any authority from him to put their cattle on it.   If the plaintiff were bound to fence against Doyle's cattle, it would not be inferred that he was also bound to fence against those of a stranger.   Cattle are lawfully on an adjoining close, when they have a right to be there, by the consent of the owner or of one having an interest in it. *Rust* v. *Low*, before cited, where the subject is very ably discussed by PARSONS, C. J.

The defendants had no right to require, that their cattle should remain on Doyle's land.   To exercise such right they must have had a title in the close, or justified under some one who had.   And the same remark will apply to the close of Wells.   For if Doyle were bound to fence against the cattle of Wells, so that he could maintain no action against the latter, for the escape of his cattle on to Doyle's close, that obligation would not extend to the cattle of others, having no interest in the close.   So also if Wells were required to fence against cattle running in the highway, and they should break into his enclosure, although he could maintain no action for the damage done, yet he could remove them, and guard against their ingress.   The owner of the cattle could not claim to have them remain upon the close, because he has no interest in it.   They are not rightfully or lawfully on it, and cannot be so, unless by authority of the person owning the close, who may be deprived of redress for any injury, which they have done, but no rights accrue to their owner against the tenant of an adjoining close.

The cattle of the defendants were not then lawfully on the land of Doyle or Wells.

Nor does it appear, that the cattle escaped on to the plaintiff's land in consequence of his neglect " to maintain his part of the partition fence."   This provision was intended to apply to those cases, where there had been a division of the fence between owners of adjoining lands.   And until a division takes place, there cannot be said to be any neglect.   There had been no partition of the fence between the plaintiff and Doyle, nor

between Doyle and Wells. But the plaintiff could only be held liable for his own neglect, in maintaining his portion of the fence, between his close and that of Doyle, after it had been ascertained, by a division between them. No division having been made, no neglect could arise.

This construction has been put upon a statute in Massachusetts, which is nearly in the same words as our statute. *Thayer* v. *Arnold*, 4 Metc. 589 ; *Sheridan* v. *Bean*, 8 Metc. 284.

The defendants have neither shown that their cattle were lawfully on the adjoining lands, nor any neglect of the plaintiff to maintain his part of the fence. Failing in either of these positions, their defence fails entirely.

It is hardly necessary to add, that the rights of the owners of lands, adjoining highways, remain as they were at common law, unaffected by the statute. The case of *Stackpole* v. *Healy*, 16 Mass. 33, contains a full and elaborate exposition of them.

According to the agreement of the parties, the defendants are to be defaulted.