# SULLIVAN,

## CORNWALL *v.* THE SULLIVAN RAILROAD.

Railroad corporations are required by statute to maintain fences on the sides of their roads, for the protection of all whose land adjoin the railways, and all who are rightfully upon the lands, except where the corporations have settled with and paid the owners of the adjoining lands for building and maintaining the fence.

Railroad corporations are not bound, either at common law or by statute, to fence their roads for the benefit of trespassers.

Where a railroad company owned a piece of land adjoining their railway, and the plaintiff owned a tract adjoining the company's piece, and there was no fence between the plaintiff's land and the land] of the corporation, and no steps had been taken to have any division of fence between them, and there was no fence between the company's piece of land and the railway, and the plaintiff turned his sheep upon his own land, from which they strayed upon the land of the corporation, and thence upon the railroad track and were killed—*Held*, that the plaintiff could not sustain an action against the company for the loss of the sheep.

TRESPASS, for running over eleven of the plaintiff's sheep, with the engines and cars of the railroad company, and destroying them.

It appeared in evidence that the railroad company owned a strip of land between their road and the land owned by the plaintiff.

There was no fence between the plaintiff's land and the land of the company, or between the plaintiff's land and the railroad track. No division of the fence between the plaintiff's land and the land of the defendants had been

made, and no notice given by either to the other to build a fence.

The plaintiff turned his sheep upon his own land, from which they escaped upon the land of the defendants, and thence upon the railroad track, and were killed by the engine.

The defendants' counsel contended that the railroad company are not bound to fence, that their only liability is to pay the adjoining landowner for fencing, if they do not fence after notice.

That the law in regard to fencing does not apply where the company own the land, but the law in regard to adjacent land owners governs.

That if the company own land adjacent to their railroad, they are not bound to fence against such land, and are not liable for any accidents happening to creatures wrongfully on their land.

And they requested the court to instruct the jury according to these positions; but the court instructed the jury that, for the purposes of the trial, they would take the law to be that the railroad company were bound to maintain a fence between their track and the plaintiff's land.

The jury found a verdict for the plaintiff, which the defendants moved to set aside, and that a new trial might be granted, on the ground of alleged error in the instructions of the court; and the questions arising upon the motion were transferred to this court for determination.

*Cushing*, with whom was *Wheeler*, for the defendants.

The case, in its present aspect, raises the question of the liability of the railroad company to fence its road, and we say,

I. The duty of railroad companies to fence their roads is entirely a matter of statute. A person who digs a pit on his own land, will not be liable for accidents happening to creatures wrongfully there. And, at common law, and un-

der our statute, until the fence is properly divided by the fence viewers, or by agreement, no man is obliged to fence his own land against the cattle of others, but each man must, at his own peril, keep his own creatures on his own land. *Blythe* v. *Topham,* Cro. James 158; *Deane* v. *Clayton,* 7 Taun. 489; *Avery* v. *Maxwell,* 4 N. H. Rep. 36; *Tewksbury* v. *Bucklin,* 7 N. H. Rep. 518.

The statute seems to be designed to operate where a right of way, and nothing more, is acquired by the railroad company. It is for the protection of the land owner, so far as his convenience and security require it.

If the land owner notify the railroad company, the duty of fencing arises, and if this duty be neglected, the land owner may avail himself of the statutory remedy.

II. The railroad company are not bound to fence against themselves. They are not bound to fence for the protection of trespassers. In regard to land owned by them, they are like other land owners; they may be compelled to fence by law, and are not liable for accidents happening to cattle wrongfully on the land of the company.

*Vose,* for the plaintiff.

This accident happened in consequence of the railroad having neglected to do that which the law required them to do, that is, fence their road. If the statute does not say this in express terms, it does at least by implication. Rev. Stat. ch. 142, § 6. The accident having happened through their neglect, the corporation is liable for the loss of the sheep.

EASTMAN, J. It is not found by the case nor suggested in the argument, that the plaintiff's animals were killed through any inexcusable negligence on the part of the defendants or their servants, in running their engines and cars; and, therefore, no question arises as to any liability on that account. We do not understand the plaintiff to contend that the defendants did not exercise all ordinary care and

prudence in the use of their road, but he insists that the loss is one which must fall upon the corporation, in consequence of their not having the railway fenced where the sheep went upon it.

It may be regarded as settled in this State by two recent decisions, that our statute, at least by implication, requires that railroad corporations shall maintain fences on the sides of their roads, for the protection of all whose lands adjoin them. The sections of the statute are as follows:

" If any railroad corporation shall neglect to keep a sufficient and lawful fence on each side of their road, any person against whose land such fence is insufficient, may notify the agent of such corporation thereof, and if such fence shall not be made sufficient within twenty days after such notice, the owner of such land may make or repair such fence, and may, thereupon, recover of said corporation, in an action of assumpsit, double the amount necessarily expended in making or repairing the same as aforesaid : *provided, however,* that the foregoing provisions of this section shall not apply to any case where such corporation shall have settled with and paid the owner of such land for building and maintaining such fence." Comp. Stat. ch. 150, § 46 ; Rev. Stat. ch. 142, § 6.

" If any person having been thus settled with and paid for keeping any such fence in repair, shall neglect so to do, such railroad corporation may make such repairs, and recover the necessary expense thereof of the person liable." Comp. Stat. ch. 150, § 47 ; Rev. Stat. ch. 142, § 7.

Under these sections of the statute, it was held in *Towns* v. *The Cheshire Railroad,* 1 Foster's Rep. 363, that railroad corporations are not bound to make or keep fences, except against the land of persons adjoining the railroad. The converse of the proposition would of course be, that they *are* bound to maintain fences against the lands of persons *adjoining* the road.

In *Dean* v. *The Sullivan Railroad,* the action was brought

by the adjoining land owner, for damages occasioned by his cattle's straying from his land, by reason of the neglect of the corporation to fence against his land, and also for damages sustained by trespasses on his land, occasioned by such neglect; and the particular question raised by the argument was, whether the clause of the statute, imposing a penalty upon the corporation for not keeping a sufficient and lawful fence upon each side of the road, relieved the corporation from other actions for damages by the land owners, occasioned by the neglect so to fence; whether it was the design of the statute to exonerate the corporation from all liability, except that of paying double the amount expended by the land owner in building or repairing the fence after due notice to the corporation; and the court decided that such was not the intention of the statute; and they held, in general terms, that railroad corporations are required by statute to maintain fences on the sides of their roads. This applied to all cases of complaint by adjoining land owners, except where they had themselves been paid for assuming the duty. The decision went no further than to apply to land owners, for the facts did not require it.

These two decisions have been regarded as settling the construction to be put upon the statute, so far as to define the obligation which rests upon railroad corporations to fence their railways; and it is this: that they are bound to keep fences on the sides of their roads against the land of persons adjoining the road, except where the corporations shall have settled with and paid the owners of the adjoining land for building and maintaining the fence.

But it is sought by this case to extend the obligation of the corporations beyond the doctrine of the decisions alluded to, and to make them liable to all persons, whether the land adjoin the railroads or not, and for all losses that happen from the destruction of property upon the roads from the want of fences, whether the property be rightfully upon the roads or not. The argument amounts to this, that the cor-

porations are required by law to maintain sufficient fences upon the sides of their roads, and are, therefore liable to all persons for all damages consequent upon a failure to keep up the fences, regardless of any other considerations whatever. This must be the position, for the facts in the case show that the action cannot be sustained unless upon such grounds. They show that the plaintiff's land did not adjoin the railway, and that his sheep had no right or permission to be upon it. The corporation owned a piece of land adjoining their railway. The plaintiff owned a tract adjoining the piece belonging to the corporation—the piece belonging to the corporation lying between the railroad and the plaintiff's land. There was no fence between the plaintiff's tract of land and the piece belonging to the company, and no steps had been taken by either party to have any division. Neither was there any fence between the railway and the piece owned by the company. The plaintiff turned the sheep upon his tract, and they strayed upon the defendants' piece and then upon the railway, and were killed.

Now it is clear, that, upon these facts, the sheep had no right to be upon the defendants' piece of land. They were trespassers there, each party being bound to keep his own cattle upon his own land. It is well settled that where there are adjoining closes, with an undivided partition fence, which each owner is bound to keep in repair, as was the case here, each is required to keep his cattle on his own land at his peril. *Tewksbury* v. *Bucklin*, 7 N. H. Rep. 518; *Avery* v. *Maxwell*, 4 N. H. Rep. 36; *Rust* v. *Low*, 6 Mass. Rep. 90; *Little* v. *Lathrop*, 5 Greenl. 356; *Pomfret* v. *Ricroft*, 1 Wms. Saund. 321. And this plaintiff would have been liable for any damage done by the sheep upon the defendants' piece of land.

It is entirely evident, then, that the sheep were not rightfully upon the land of the company adjoining the railroad. The law gave the plaintiff no right to have them there, and the defendants had given him no permission. And unless

the corporation are obliged to fence against wrongdoers, against those who have no interest in the land adjoining the railroad and no right to be upon it, the action must fail.

Were this a question between adjoining owners of land there could be no doubt upon the subject, for the doctrine is settled by numerous authorities, that the owner of a close is bound to fence only against cattle which are rightfully in the adjoining close. *Avery* v. *Maxwell,* 4 N. H. Rep. 36; *Rust* v. *Low,* 6 Mass. Rep. 90; *Wells* v. *Howell,* 19 Johns. 385; *Thayer* v. *Arnold,* 4 Met. 589; *Lord* v. *Wormwood,* 29 Maine Rep. 282; *Dovaston* v. *Payne,* 2 H. Black. 527; *Little* v. *Lathrop,* 5 Greenl. 356. And these sheep being wrongfully upon the defendants' piece of land adjoining the railway, the company would not be obliged to fence their railroad against them.

Can this rule be changed unless by express statute? Can the plaintiff's position, in any way be sustained, independent of the sections of the statute which we have quoted? We have reflected upon the matter much, and have examined it patiently, to see if we could discover any satisfactory principle which should lead us to depart from the rule laid down by the authorities cited as governing adjoining owners; to see if there was any reason which should give a wrongdoer any greater rights over a railroad, being an adjoining owner, than over an individual. And we have been unable to find any. We have been unable to see why a person who is wrongfully upon a piece of land adjoining a railroad, should be permitted to say, so far as he is concerned, that the railroad shall be fenced for him, any more than he is permitted to say it to an individual; why he may be permitted securely to enjoy the wrongful use of land adjoining a railroad, which he has appropriated to himself, and upon which he is trespassing, any more than to enjoy the use of the land of individuals similarly situated. And we have been unable to see why, if the plaintiff's sheep, as has

been clearly shown, were wrongfully on the defendants' land, and from thence strayed upon the railroad, where they had no right to be, and were killed by an unavoidable accident, he should be permitted to recover their value. If he can, then may a party, being himself in fault, recover damages for an injury which would not have happened to him, had it not been for his same fault; then may he clearly take advantage of his own wrong.

But we will come to the consideration of the question whether there is any thing in the statute upon the subject which can aid the plaintiff; whether there is any thing which obliges the corporation to fence their road against cattle which are wrongfully as well as righfully upon the adjoining close.

We have seen that in *Towns* v. *The Cheshire Railroad*, 1 Foster's Rep. 363, it was held that railroad corporations are not bound to make or keep fences, except against the land of persons adjoining the railroad. In *Dean* v. *The Sullivan Railroad*, 2 Foster's Rep. 316, it was said that, " at common law, owners of adjoining lands owe each other no duties, and are subject to no obligations to maintain fences. By our statute, they are bound, if the lands are improved, to maintain the partition fence equally. Rev. Stat. ch. 136. As owners of land, where they own their track, railroad companies are subject to the same liabilities as other owners." These cases were both decided upon the statute; and according to them, it would seem plain that these defendants, owning the land adjoining the railway themselves, were not bound to fence the road against trespassers on their land and road. Are these decisions to be overruled, or their doctrines extended so as to cover the plaintiff's case ?

There is no doubt that the safety of the traveling public requires that railways shall be fenced so as to prevent any incursions upon them from any ordinary source whatever; and under the provisions of our statute, if fully lived up to, it could seldom happen that the roads would not be suffi-

ciently fenced to secure passengers from that source of danger. But even in a place where they may not be bound to fence, as, for instance, where the corporation may have settled with the land owner for maintaining it, still there would be a deep interest in the company to have a fence in such place; for not only would they be held up, for any delinquency, to the condemnation of public opinion, and might, perhaps, be liable under the statute of 1850, but being common carriers of passengers, they are liable for all damages that may arise to them from even the smallest negligence on their part, or that of their servants. 2 Kent's Com. 602. And should an injury befal a passenger in the cars, from the want of a fence on any part of the road, we think that the corporation could not successfully defend an action for the same upon the ground that they were not obliged to have a fence upon that part of the road. Having undertaken to transport passengers for hire, it is their duty to have safe and well made engines and cars; careful, trustworthy and faithful servants to run them; a road so well constructed as to be safe for transportation upon it, and so well guarded in all respects as not to expose their passengers to injury or their lives to danger. Not only are the cars and engines the property of the corporation, but the road itself. As a general thing, they have its exclusive possession and occupancy, and are as much bound to have their road safe and in good order, as their engines and cars; and in case of an accident from the want of a fence, they would not be permitted to shift their liability as carriers upon a trespasser on the road, who would not have been such, had the road been properly fenced. In such a case they could not say that they had settled with the adjoining land owner for making and maintaining the fence, and hence were not liable, for they have the power to make the fence, in such instances, where the land owner neglects to do it. This is given by the seventh section of chapter 142 of the Revised Statutes, before cited. Neither could they say that

they owned the land adjoining the road and were not bound by statute to fence it, and so were not liable, for their duty to have their road properly guarded for the safety of their passengers would be an answer to any such position.

But while the corporation may well be held liable for injuries sustained by passengers whom they have undertaken safely to transport, when those injuries arise from any fault on the part of the company, either in neglecting to see that their road is fenced, or from any other delinquency, (and had any injury befallen passengers when the plaintiff's sheep were killed, the corporation may have been liable for the damage,) yet it by no means follows that those who have no claims upon the company in any respect, and have no right to be upon the road for any purpose whatever, can recover damages for unavoidable injuries received while thus trespassing upon the road. It would certainly seem to be the introduction of a new principle into our legal jurisprudence to sustain such an action.

But were the defendants bound by statute to make a fence between their piece of land and their road? Did the legislature intend that they should fence their road against themselves and against the world, and to make them liable for all damages whatsoever, however they might be occasioned, if they did not so fence?

We have seen that according to the two decisions alluded to, such was not the case. But we will examine the matter a little further.

It will be observed that the 46th section of the statute which we have cited, after stating the remedy of land owners, in case the road be not fenced, contains a proviso in these terms: " Provided, however, that the foregoing provisions of this section shall not apply to any case where such corporation shall have settled with and paid the owner of such land for building and maintaining such fence." This proviso gives the corporation power to contract with the land owners, and pay them for making and maintaining

the fence; and of course, so far as the land owners are concerned, or have rights, to shift the responsibility of making and maintaining the fences between their land and the railroad upon them. Where the land owner has assumed the duty of making and maintaining the fence, and has been paid for it, he cannot complain that there is no fence. Now if the corporation can, by statute, contract with the adjoining land owner to make and maintain the fence, and if such contract, when carried out, shall relieve the corporation from making the fence, as it clearly must, it follows, as an unavoidable inference, that the corporation cannot be liable to the land owner in consequence of there being no fence, nor to any one except to passengers and those who are rightfully upon the road. The statute amounts to this, that it may be a matter of agreement between land owners and the corporation whether, so far as the former are concerned, there shall be any fence between the road and the adjoining lands or not. If, then, the corporation and the owner of the land may decide as to the fence, so that there may be one or not, it would seem to follow very clearly that the corporation, being itself the land owner, can, so far as the statute is obligatory, take such course as it may please; and that consequently there is no provision of the statute by which the corporation can be required to fence between its own land and its own road. It cannot, therefore, be said that the plaintiff's sheep were rightfully upon the land of the defendants, on the ground that the statute required them to have a fence where the sheep went upon the road, any more than upon the general principles already considered. There is no compulsory statutory requirement upon the corporation to fence their own land and their road against land owners who do not adjoin the road, which can make that right in the plaintiff, to wit, his trespass on the defendants' piece of land, which, upon all general principles, was wrong. And if he was himself in the wrong, and his loss arose in

consequence of that wrong, then no action can be sustained by him for the accidental destruction of his property.

The general result at which we have arrived in this case, is fully sustained by several recent decisions, both English and American. In *Ricketts* v. *The East and West India Docks and Birmingham Junction Railway Company*, 12 Eng. Law and Equity Rep. 520, where the plaintiff's sheep, trespassing on A.'s close, strayed upon the defendants' railway, which adjoined, through a defect of fences which the defendants were bound as against A. to make and maintain, and were killed, it was *held*, that the plaintiff could not recover, either at common law or under the statute, or on the ground that the defendants exercised a dangerous trade; the obligation to make and maintain fences applying only as against the owners or occupiers of the adjoining close.

The facts in that case were very similar to those in the present one, and the decision appears to be precisely in point. The corporation were bound by the statute to maintain the fences; the plaintiff was owner of a close adjoining a close which was the property of another company; by a defect in the plaintiff's fences his sheep came upon the adjoining close, and by a defect in the fences upon the road, the sheep strayed upon the railway and were killed.

So in *Jackson* v. *The Rutland and Burlington Railroad Company*, Vermont supreme court, February term, 1853, it was held that the owners of animals suffered to go astray, and trespassing upon a railroad, cannot recover for their destruction by a train, without negligence on the part of the servants of the company, even when the company is under special statutory obligation to fence its road and has omitted to do so.

By the provisions of the defendants' charter, as well as by the general law of the State, the corporation was required " to build and maintain sufficient fence on each side of their

road through the whole route thereof." The able Chief Justice, *Redfield,* who delivered the opinion of the court in that case, is very explicit and decided in his views upon the subject. In the course of the opinion he uses, in substance, the following language: " We cannot conceive how any one can be said to be directly interested in the maintaining of fences upon a railway beyond the adjoining proprietors of land, and those who may travel upon the road, either as passengers or workmen. This enactment only places the defendants in the position of an adjoining proprietor. The statute imposes this burden exclusively upon the railway, which, as between adjoining proprietors generally, is to be borne jointly and equally. But the matter of such adjoining fence is always a subject of stipulation between the adjoining occupants or proprietors, or may become so, at any time, without the right of interference by any one. Hence it was competent for the defendants to stipulate with the land owners adjoining the road, to let the land remain unfenced, or to assume that burden themselves, and no other land owner could complain, upon the mere ground of increased liability to his cattle. The railway company must, from the very nature of their operations, have the right at all times to the exclusive occupancy of the land taken, and to exclude all concurrent occupancy by the former owners, in any mode and for any purpose.

The company certainly owes no duty to persons or property in the highway or the fields adjoining the railway, unless rightfully there. While the obligation to fence rests upon the defendants, they are only bound to fence against cattle in such adjoining fields. This obligation extends only to the owner or rightful occupier of the adjoining fields, and not to mere trespassers there; and stray cattle are nothing but trespassers, presumed to have escaped through the insufficiency of their owners' fences, which in law is the same as if the owner had suffered them to go at large without any restraint whatever.

The result of all our examination, then, is, that the plain-tiff's horses were at large through the defect of his own fences, and were trespassers upon the defendants' lands, and the plaintiff had no legal claim either upon the defendants or the adjoining proprietors to keep the railroad on the ad-joining lands fenced for the security of the plaintiff's cattle while thus going at large; and that he has no remedy against any one, if they were killed by the defendant's en-gines, without negligence at the time in the management of the engines."

To the same effect are *Tonawanda Railroad* v. *Munger*, 5 Denio's Rep. 255; *New York and Erie Railroad* v. *Skin-ner*, supreme court of Pennsylvania, American Law Regis-ter, December, 1852; *Perkins* v. *The Eastern and the Bos-ton and Maine Railroad*, 29 Maine Rep. 307; *Marsh* v. *The New York and Erie Railroad*, 14 Barb. Sup. Court Rep. 364.

We have examined this case with more than ordinary care, but we have not been able to find any principle upon which we think the plaintiff can recover. According to the facts disclosed, the defendants are under no obligations to the plaintiff for the loss he has sustained, and they have done him no wrong. They have done him an uninten-tional injury, which was brought about, not by their fault, or by the failure to perform any obligation that they were under to him, but by his own fault, in turning his sheep upon his unfenced land, when he must have known that in all probability that would stray upon the railroad and be killed.

The result, then, must be this; the defendants were not obliged to fence against themselves, except for the protec-tion of their own passengers, and those who were rightfully upon the road; there is no requirement, either by common law or by statute, imposing such a duty; the plaintiff's sheep were trespassers upon the defendants' close, and were

wrongfully there ; they were upon the road through no fault of the defendants, and were killed by no negligence of theirs, and therefore the defendants cannot be liable.

The verdict must, of course, be set aside, and a

*New trial granted.*