MAYBERRY v. CONCORD RAILROAD.

47   391
66   150
67   449

A railroad is not bound to maintain a fence on the line of its road against cattle unlawfully in a pasture adjoining.

Whether it would be otherwise if the owner of the cattle was in possession of the pasture by disseizin, *quære*.

CASE, for killing plaintiff's horse on defendant's railroad.    Plaintiff introduced evidence tending to show that in the evening plaintiff's son turned the horse into a small pasture, belonging to one Hatch, and ad-

joining said railroad, and that, in an hour or two afterwards, the horse went from the pasture to the railroad, through an insufficient and defective fence between the pasture and the railroad, and was killed upon the railroad by defendant's locomotive.

Plaintiff lived in a house which was separated from the pasture by a common highway. Plaintiff's son testified that plaintiff hired the house of one Hook; that Hook was agent of one March; that March hired the house of said Hatch; that the horse was sometimes turned into the pasture to drink because it was the easiest way to water him; that Hook told witness and plaintiff when plaintiff hired the house, that they might turn the horse into the pasture when they wished, and told them that on Sundays they might turn the horse upon the railroad to feed; that the cattle of Mr. Hatch were sometimes pastured in the pasture; that the land about the house was occupied and cultivated, but not by plaintiff.

Plaintiff and his son testified that Mr. Hatch never objected to their turning the horse in the pasture, and that they were always away from home with the horse in the day time.

Defendant moved for a nonsuit on the ground that there was no evidence competent to be submitted to the jury, to show that the horse was rightfully in the pasture. The court declined to order a nonsuit and defendant excepted.

Defendant requested the court to instruct the jury that there was no evidence that the horse was rightfully in the pasture, or that he was there with the assent of Hatch. The court declined so to instruct the jury, and defendant excepted, and moved to set aside the verdict, which was for plaintiff.

*S. N. Bell,* for defendant.

The law is settled in this State that railroad corporations are only bound to maintain fences along the lines of their road against cattle rightfully on the adjoining close, and are not bound to maintain such fences as against animals wrongfully in such close. *Chapin* v. *Sullivan Railroad,* 39 N. H. 53; same case, 39 N. H. 564. Nor against a wrong-doer or trespasser. *Cornwall* v. *Sullivan Railroad,* 28 N. H. 161.

The question presented here is, whether the plaintiff's horse was rightfully in the close adjoining the railroad. The pasture belonged to Hatch, and the house belonged also to Hatch; the house was hired from him by March; March, by his agent Hook, leased the house to the plaintiff. Although March hired the house, he did not hire the land adjoining, nor did he hire the pasture.

Hook did not hire the pasture, individually, nor as the agent of March. Hook had no authority from Hatch, nor from March, to allow the plaintiff to use the pasture, nor had he any claim of right to let the pasture to the plaintiff, or consent that he might occupy it. Hatch did not make Hook his agent to let the pasture, nor consent that the plaintiff should occupy or use it; nor did the plaintiff occupy it with the knowledge of Hatch and without objection from him, from which his

assent might be presumed.   Hook had no better authority to allow the plaintiff to occupy the pasture, than he had to convert the railroad into a pasture.

The horse was not rightfully in the pasture, because he was not there by the consent of the owner, nor by consent of any one who had a right to permit him to be there.

Plaintiff's evidence shows no permission from Hatch to occupy the pasture, no rightful permission from March, because March had no right there, nor any consent by Hatch that he might occupy it, nor any occupation with the knowledge of Hatch, and without objection from him, so that his assent might be presumed.   The plaintiff's occupation of the pasture was without right and he was a trespasser.   There was no fact from which the jury could find that the plaintiff had any right to occupy the pasture.

The railroad were not bound to fence as against the plaintiff's horse, and are not liable for damages by reason of the horse escaping from the pasture on to the track of the railroad and being there killed.

*Hatch,* for plaintiff.

I.   There was evidence at the trial, from which the jury rightfully inferred that the plaintiff's horse was lawfully upon the land of Mr. Hatch.   (1.)   Hook expressly licensed plaintiff to turn his horse into the pasture.   Neither party undertook to show the extent of Hook's authority, and the presumption is that he did not exceed it.   At any rate, the title he gave to plaintiff is good until impeached.   The circumstances under which the plaintiff hired the house tend to show full powers in Hook.   (2.)   The watering place was in the pasture.   (3.)   It is to be presumed that Mr. Hatch knew what use plaintiff was habitually making of his pasture.   (4.)   Hook's direction to plaintiff to pasture the horse on the railroad, Sundays, was merely a direction to turn him upon another part of Mr. Hatch's land; the railroad have only an easement.   (5.)   The burden of proof is on defendant to show that plaintiff's horse was not lawfully in the pasture.   No evidence was offered by defendant to show this.

II.   But it is immaterial whether the horse was rightfully on Mr. Hatch's land; the defendants are bound to fence against everything that may be there.   *Browne* v. *Providence, Hartford & Fishkill Railroad,* 12 Gray 55; *Corwin* v. *N. Y. & Erie Railroad,* 3 Kernan 42; *Isbell* v. *N. Y. & New Haven Railroad,* 27 Conn. 393; *Fawcet* v. *The North Midland Railway,* 16 Adol. & Ellis N. R. 618; *Sharrod* v. *London & N. W. Railway,* 4 Welsby, Hurlstone & Gordon (Exch.) 586.

Our statute, Comp. Stats. ch. 150, sec. 45, is like those upon which the above cited decisions are founded.

I am aware that in several cases in this State a different rule has been announced.   Each of these cases is, I think, distinguishable in its facts from the present; though the rule is somewhat broadly stated by the

court. But the strong reasoning, very respectable authorities cited above, seem to call for a reconsideration of the question.

BELLOWS, J. There is no evidence of any letting of the pasture to the plaintiff by the owner, Mr. Hatch, or of any permission from him to put the plaintiff's horse there. March had hired the house of Hatch, but not the pasture; and, of course, neither he nor his agent, Hook, had any control over the pasture, or any authority to permit the plaintiff to turn in his horse. The testimony that Hatch had never objected has no significance, because there is no evidence tending to prove that he had any knowledge that the plaintiff pastured his horse there, much less that he did so, claiming a right to do it.

We think, then, there is no evidence on which the jury could have found a license to the plaintiff to put his horse into that pasture; and we are clear, that, on all the evidence in this cause, the plaintiff could have had no defence to an action of trespass by Hatch for breaking and entering his pasture, and the court would have been bound so to instruct the jury.

If there had been evidence that the horse had been habitually pastured there, and that Hatch was in a situation to see and know it, there would have been more significance in the absence of any objection by him; but the only evidence is the testimony of the plaintiff's son, that, on the day of the injury, in the evening, he turned the horse into the pasture, and in an hour or two he went on the railroad and was killed; and his father's statement that the horse was sometimes turned into the pasture to drink, because it was the easiest way of watering him; beyond this there is no evidence that the plaintiff's horse was kept in this pasture, and there is absolutely no evidence whatever that Hatch had any knowledge of its being there at all.

It is in truth nothing more than a case of ordinary trespass, and we think the jury could not legally have found that the horse was lawfully in that pasture; and that being the case, the defendant was not bound to maintain a fence against it.

This is expressly settled in *Chapin* v. *The Sullivan Railroad*, 39 N. H. 53, where the authorities are collected, and we think they are decisive.

If the owner of the horse had been in the actual possession of the pasture, having discovered the true owner, it might be a question whether the railroad could have set up a defect in the plaintiff's title as a defence; but nothing of that kind is shown here. The plaintiff's son testifies that Hook told him that they might turn their horse into this pasture when they wished, and also told him that on Sundays they might turn him upon the railroad to feed; but it does not appear that under this, or in any way, the plaintiff claimed the possession of the pasture, or even the right to turn his horse into it.

Indeed, there is nothing in the character of the acts proved to distinguish this from ordinary trespasses, and if the plaintiff can recover here it would be a practical overruling of the doctrines of *Chapin* v. *The Sullivan Railroad.*

*Verdict set aside.*