Aug. 12,
1875. GILES *v.* BOSTON & MAINE RAILROAD.

*Fences—Liability to trespassers.*

A railroad corporation is not liable for damages done to cattle unlawfully in a pasture adjoining, and escaping thence upon its roads through defective fences which the railroad is bound to keep in repair.

TRESPASS on the case, for killing a pair of oxen belonging to the plaintiff, valued at $250. Writ dated July 26, 1874. Plea, the general issue. At the trial before STANLEY, J., the plaintiff offered evidence tending to prove the following state of facts:

On July 11, 1874, and from thence till date of writ, the plaintiff and one Perkins owned and occupied in common a certain close in East Kingston called the "Veasey pasture," adjoining the farm of one John S. Lamprey, and separated therefrom by a fence, and through which farm passes the defendants' railroad. On that day, the plaintiff's oxen, together with cattle of said Perkins, were lawfully in the Veasey pasture, and strayed thence on to the farm of said Lamprey, through that portion of the division-fence between the Veasey pasture and said farm, which said Lamprey was alone bound by law to build and keep in repair, but which was then insufficient, while that portion of the division-fence which the plaintiff and said Perkins were bound to build was in good repair and sufficient. From the farm of said John S. Lamprey the oxen and cattle strayed on to the adjoining meadow of one Lewis Lamprey, who, on the following morning, drove them to the house of said Perkins, and Perkins thereupon directed his son Willie, a lad of nine years of age, to drive said oxen along the public highway, which led through the farm of said John S. Lamprey, to the house of the plaintiff, which his said son attempted to do; and in passing along said highway, through the farm of said John S. Lamprey, said oxen escaped from him, about eight o'clock in the morning of July 12, and ran from said highway into an unfenced private way of said Lamprey, open to said highway, and leading thence across a field, being a portion of said farm of said Lamprey, about one hundred rods to said railroad. The day was very stormy, and the Perkins boy being unable to recover the oxen, returned home. The oxen wandered along said private way and field, and through the defendants' fence, separating their railroad from said field, on to the track of said railroad,—defendants' fence being out of repair, and insufficient,—and about ten o'clock A. M. of July 12, said oxen were there struck and killed by the defendants' locomotive driven on their road. Said private way was open and unobstructed, from the highway to the railroad. The plaintiff had no knowledge that his oxen had strayed from his pasture until after they were killed as aforesaid. The defendant then moved for a nonsuit, which motion the court sustained, and the plaintiff excepted.

The questions arising on the foregoing case were transferred to this court for determination.

*Marston*, for the plaintiff.

*Hatch*, for the defendants.

SMITH, J.　Railroad corporations are not bound, either at common law or by statute, to fence their roads for the benefit of trespassers, nor against any except adjoining land-owners. *Cornwall* v. *Sullivan R. R.*, 28 N. H. 161; *Mayberry* v. *Concord R. R.*, 47 N. H. 391; *Chapin* v. *Sullivan R. R.*, 39 N. H. 57; *Woolson* v. *Northern R. R.*, 19 N. H. 269; *Towns* v. *Cheshire R. R.*, 21 N. H. 366. The manner in which the plaintiff's oxen escaped into the field of John S. Lamprey, and thence into the field of Lewis Lamprey, and to the house of Perkins, is immaterial. The case shows the cattle upon the highway in the care of a boy nine years of age. They escaped from him upon the land of Lamprey, and, being unable to recover them, he abandoned them and returned home. The evidence clearly tends to prove that the plaintiff's oxen were wrongfully upon Lamprey's land. It was through no fault of the defendants that the cattle strayed from the highway upon the close of Lamprey, but it was from want of proper care upon the highway that they entered Lamprey's close. The obligation of the defendants to fence the line of their road extends only to owners or to persons rightfully occupying the adjoining fields, and not to trespassers.

The authorities upon this point are very numerous, a few of which are —*McDonnell* v. *Pittsfield & N. A. R. R.*, 115 Mass. 564, *Maynard* v. *B. & M. R. R.*, *ib.* 459, *Eames* v. *Salem & Lowell R. R.*, 98 Mass. 560, *Rust* v. *Low*, 6 Mass. 90, *Lord* v. *Wormwood*, 29 Me. 282, *Jackson* v. *Rutland & Burlington R. R.*, 25 Vt. 150, 1 Redf. on Railw., ch. 20.

CUSHING, C. J.　It appears from the case, that the plaintiff's oxen, after sundry wanderings, finally arrived at the house of Mr. Perkins, the owner in common with the plaintiff of the pasture from which they escaped. The use of the highway for the purpose of sending the cattle home to the plaintiff was certainly lawful. It is true, that Perkins may not in strictness have had authority to send the cattle home, or to retain them in his own yard. It may be that he had no authority to do anything with them, excepting to turn them into the highway; but he might well presume that the plaintiff would adopt and ratify his act; and I think the court cannot treat the act as unlawful as against the railroad corporation or the public.

In *Midland Railway* v. *Daykin*, 17 C. B. 126, S. C. 33 Eng. L. & E. 193, it was held, that, where a colt strayed from a field upon a public road, abutting upon which was a yard not fenced, the gate of which was, through the neglect of the company's servants, left open, and, while the colt was being driven back to the field by the servants of

the owner, it escaped into the yard and thence upon the railway, where it was killed by a passing train, the company were liable. JERVIS, C. J., says,—" I can see no reason to doubt that that was a lawful use of the highway." In *Ellis* v. *The London & South-western Railway*, under similar circumstances it was held that the company were not liable, for the reason that the negligence of the plaintiff and his servants had contributed to the accident, notwithstanding the company's neglect of duty.

It appears to me that the cattle of the plaintiff were rightfully in the highway; and the private way of John S. Lamprey not being fenced, and the cattle accidentally escaping into it, were rightfully there. In other words, the plaintiff was not in any neglect of duty, unless the cattle escaped from the highway into the private way through want of proper care. This would seem to depend upon the question whether the boy Willie was a suitable person to be intrusted with the care of the oxen on that day. The fact that he was not able to take care of them furnishes some evidence of his incompetency. However, in the position in which the case stands, it is impossible to say that the jury might not have found that the plaintiff's negligence did not contribute to the accident, in which case, according to the foregoing authorities, the defendants would be liable.

It is not to be forgotten that this result assumes that the road is bound to fence against all animals which are not on the adjacent land as trespassers. It assumes that the corporation is bound to fence, not only against the adjacent land-holder and for the protection of animals placed there by him, but also against all animals which are there under such circumstances that he would not be entitled to treat them as trespassers.

It is true, that the cases use the phrase " rightfully on the highway " when they speak of those cases in which the railroad corporation is liable; but the language of some of the cases seems to limit their liability. In view of the suggestion that the railroad companies were exercising a dangerous trade, and so bound so to fence as to protect the public, it was said, in the above cited case of *Midland Railway* v. *Daykin*, that the business was authorized by the legislature, and that the legislature considered that sufficient protection had been secured to the the public by providing for the safety of the owners and lawful occupants of the lands. So, in *Horne* v. *Atlantic & St. L. R. R.*, 39 N. H. 440, it is assumed that the liabilities of the corporation are to the land-owner, and to the occupants of the land considered as land-owners, and not otherwise; and in *Smith* v. *The Eastern R. R.*, 35 N. H. 356, although in the language of the court the cattle are spoken of as being on the railroad by the fault of the defendant and without the fault of the plaintiff, still, the case was between the railroad corporation and the adjacent land-owner; and what was said must be with reference to that fact.

It may also be remarked, that the provision of the statute—Rev. Stats., ch. 146, sec. 6, Comp. Stats. 351, sec. 46, and Gen. Stats.,

ch. 148, sec. 3—permitting railroad corporations to agree with the land-owner to provide fences, seems to indicate that it is the land-owner whose protection the statute specially contemplates. It is true, the language of Gen. Stats., ch. 148, sec. 3, is somewhat varied from the former law, but it is one of those changes marked in the commission-er's report as considered by them merely verbal.

On the whole, then, my conclusion is, that the plaintiff's cattle, although they might have been found by the jury not strictly speaking trespassing in such sense that their owner could have been sued for damages, were not so the property of the owner or rightful occupant of the land as that the railroad corporation were bound to fence for their protection.

The case does not find any want of care in the management and operation of the road. Undoubtedly, if the cattle were on the railroad wrongfully, that would not justify the want of reasonable care on the part of the defendants to avoid injuring them. If there is anything for the jury in this particular, the nonsuit should, I think, be taken off; otherwise it must stand.

LADD, J.    I also think the nonsuit was rightly ordered in this case; and I place by conclusion on the ground that the oxen were wrong-fully on the land of John S. Lamprey at the time they strayed there-from upon the line of the defendants' railroad. It is because of the disposition of such animals to rove that their owner is liable in trespass if they escape and go upon the land of another, without reference to any question of fault or negligence, except when the damage happens to an adjoining owner who was bound to maintain the fence over which they strayed.

The plaintiff was in no actual fault for the escape of the cattle. They, in the first place, strayed over that part of the division fence which Lamprey was bound to maintain. The plaintiff did not know they had escaped till after they were killed. The remote cause of the mischief—the cause, indeed, without which it probably would not have happened—was the fault of Lamprey in not keeping up his part of the fence; but how that fact might bear upon the question of Lamprey's legal liability for the loss of the oxen, need not be considered in deter-mining how the matter stands between the plaintiff and the railroad. The proximate cause of the loss was, their escape from the control of the boy sent to drive them home, and their straying from the unfenced high-way upon Lamprey's land. What right had they to be there? I think none at all. They had been taken up by Lewis Lamprey while trespassing on his meadow, and driven to the house of Perkins. Perkins properly sent them forward towards home. Whether the boy was of sufficient age and capacity to be intrusted with the service of driving them home seems to me of no consequence, so far as regards the question we are considering. If the cattle escaped control, and became trespassers while on the way home, it makes no difference whether it happened through the fault, incapacity, or negligence of their driver, or otherwise.

It was their nature to rove; and it is on that ground, and not because of the actual fault of anybody, that their owner was liable for the damage they might do. Undoubtedly, if they had strayed a little beyond the limits of an unfenced highway, along which they were being lawfully driven, and caught up the grass or grain there growing with their mouths, " snatchingly," as is sometimes said, the owner would not be liable. But that was not what happened. They wholly escaped control. They were entirely abandoned by their driver, and permitted to " wander," as their nature was, upon the private way and other land of Lamprey, with no one to even look after them, until, after the lapse of two hours, they strayed upon the railroad and were killed.

I think the facts reported show that they were wrongfully upon Lamprey's land; that the defendants, therefore, owed the plaintiff no duty to fence against them, and, therefore, that the nonsuit was rightly ordered.

*Exception overruled.*