### Sylvanus Holbrook *vs.* Benjamin McBride.

A plaintiff, who, in proving his case, introduces evidence to disprove the defence set up in the answer, has not the right, without the permission of the court, to introduce further evidence to the same point in reply to the defendant's evidence.

A straight line, drawn through the centre of a Virginia fence which has been continued for more than twenty years fronting on a highway, the boundaries of which cannot be otherwise ascertained, is to be deemed the true boundary, within the meaning of Rev. Sts. c. 24, § 61; and there is no presumption that the land inclosed between that line and the angles of the fence next the highway was not intended to be dedicated to public use.

In an action against a surveyor of highways for trespassing on a close described in the declaration as bounded "westerly by the road," proof that the plaintiff owned and occupied a close, corresponding in other respects to the declaration, and extending westwardly to the line of a travelled road, does not throw upon the defendant the burden of proving that the place trespassed upon was within the limits of the highway. And the word "road" is to be construed "highway," if there be proof of the existence of a highway duly located along the same general line.

Action of tort for breaking and entering the plaintiff's close in Northbridge, described in the declaration as bounded "westerly by the road," and cutting down the plaintiff's fence thereon standing. Answer, that the fence stood in said road, (being a public highway,) and was removed by the defendant as surveyor of highways of the town.

At the trial in the court of common pleas at December term 1853, before *Mellen*, J., the plaintiff introduced evidence showing the existence of a close owned and occupied by him, bounded in other respects as described in the writ, and bounded on the west by the track of a beaten, travelled road ; that his title was under a deed which embraced land on both sides of the road, and the

road itself; and that the defendant had entered and cut down a fence which stood some feet eastwardly of the line of the travelled track. He also introduced one or more witnesses to show hostility on the part of the defendant towards him, and that the cutting down of the fence was done with malice.

The defendant, in justification of the acts complained of, gave evidence that he was a surveyor of highways of the town ; that said road was within his district; that a highway, running nearly along the line of said travelled track, was located by a committee of the court of sessions in 1821, and soon after such location a fence, of the kind commonly called a Virginia fence, was erected a short distance eastwardly of the fence cut down by him ; that the original fence had been removed from time to time, and other common kinds of fences erected on the line where it stood, for more than twenty years, and until within less than two years of the trespass complained of, when the existing fence was removed, and a new one erected by the plaintiff nearer the travelled track.

The defendant further introduced ·evidence which tended to show that the location of the highway could not be ascertained, either by monuments or records; and contended that the line of the fence first erected must therefore be deemed and taken to be the true boundary of the highway, by virtue of Rev. Sts. *c.* 24, § 61. He also introduced evidence tending to show a dedication to public use, as a highway, of the space between the ancient fence and the limit of the travelled track, and that the fence removed by him obstructed the travel.

The plaintiff, by cross-examination of the defendant's witnesses and otherwise, introduced evidence in reply, tending to show that the location of the highway could be ascertained, and that the *locus in quo* was without the limits thereof; and that the fence erected by him was a temporary structure merely, and did not obstruct the public travel.

The plaintiff then offered to show that the defendant did not remove said fence in the discharge of his duty as surveyor, but from malice and hostility to the plaintiff, and with design to do him injury. But this evidence was rejected by the court.

The plaintiff contended, that if a straight line, drawn through the westernmost angles (being those nearest the road) of the Virginia fence, was to be deemed the true line of the fence, or if the zigzag line formed by the rails of the fence was to be deemed the true line, for the purposes of the Rev. Sts. *c.* 24, § 61, portions of the fence cut down would have stood in the plaintiff's close, and not in the highway; and that the portion of the plaintiff's close within the westernmost angles of the fence, and separated from the highway by the rails of the fence, could not be deemed to have been dedicated by the owner to the use of the public.

On this point the judge instructed the jury "that an owner of land might set one half of his division fence on the land of an adjoining proprietor; that, where land bounded on a highway, the owner would have the same right as against the public, if the fence were a reasonable and proper one; that whether this species of fence was reasonable and proper would depend upon the nature, value and situation of the land; that, if the jury found this fence to be a proper one in the place where it stood, the jury could not infer, from its so enclosing the land so contained within said angles, that said land so contained was not intended to be dedicated as aforesaid, or was not within the true line of the highway; but the jury should consider the centre line of the rails to be the true line of the fence for the above purpose."

A question being made as to the burden of proof, the plaintiff requested the court to instruct the jury, "1st. That if he proved to the satisfaction of the jury a close owned and occupied by him, extending westerly up to the track of a travelled road, and conforming in other respects to his declaration, and a trespass thereupon by the defendant, a *prima facie* case would be made out. 2d. That if, to meet or rebut this *prima facie* case, the defendant would rely, either on the fact that there is a highway in existence, or that the location of said highway cannot be ascertained, the burden of proof of both these facts is upon him."

"The presiding judge gave in substance the above directions to the jury, as prayed for, and further instructed them that the

burden of proof throughout the whole case was upon the plaintiff; that the term 'road' in his declaration, under the circumstances of this case, was equivalent to 'highway'; and that, if upon the evidence the jury were not reasonably satisfied that the trespass was committed within the close described in the writ, or doubted whether it was within the limits of the highway, they should find a verdict for the defendant."

The jury found a verdict for the defendant, and the plaintiff alleged exceptions.

*G. F. Hoar*, for the plaintiff, to the point that the judge erred in ruling that the owner of land adjoining the highway had the right to place one half of his fence on the highway, cited *Newell* v. *Hill*, 2 Met. 180, 184 *& note;* 3 Kent Com. (6th ed.) 438; *Vowles* v. *Miller*, 3 Taunt. 138; *Rust* v. *Low*, 6 Mass. 96; *Commonwealth* v. *King*, 13 Met. 115; Rev. Sts. *c.* 24, § 61; and to the point that the term "road" meant only any travelled track, *Commonwealth* v. *Gammons*, 23 Pick. 201; *Jaquith* v. *Richardson*, 8 Met. 213; *Stearns* v. *Rice*, 14 Pick. 411; *Williston* v. *Morse*, 10 Met. 17.

*D. Foster*, for the defendant, to the point of the correctness of the ruling as to the fence, cited *O'Linda* v. *Lothrop*, 21 Pick. 292; *Newell* v. *Hill*, 2 Met. 180; and to the point that the boundary "on the road" excluded the whole limits of the highway, Webst. Dict. "Road"; Rev. Sts. *c.* 2, § 6, *cl.* 6; *St.* 1839, *c.* 151, § 3; *Parker* v. *Smith*, 17 Mass. 416; *Tyler* v. *Hammond*, 11 Pick. 213; *Stearns* v. *Rice*, 14 Pick. 411; *Fenner* v. *Sheldon*, 11 Met. 521; *Forbush* v. *Lombard*, 13 Met. 113.

MERRICK, J.* 1. We see no just cause of exception to the rejection of the evidence offered by the plaintiff, in reply, to show that the defendant did not remove the fence in the discharge of his duty as surveyor, but from malice and hostility to the plaintiff. The plaintiff knew from the answer what was to be the nature of the defence. He chose to attack, and, if he could, to disprove it, in advance of any evidence offered in relation to it

---

* This case and the three next following were argued at October term 1854, and decided at Boston in June 1855.

by the defendant; and he was permitted to do so by the court. No restraint whatever appears to have been put upon him in this course of proceeding. This justly precluded him from the right, without the permission of the court, of introducing, in reply, and at the close of the trial, merely cumulative evidence to the same point. *York* v. *Pease*, 2 Gray, 282. The order in which witnesses shall be called and evidence given is often within the discretion of the court. *Cushing* v. *Billings*, 2 Cush. 158. When it is so, the ruling is not open to revision. In the present instance that discretion appears to have been properly and judiciously exercised.

2. As the limits of the road referred to in the declaration, as a part of the description of the plaintiff's close, were not known, and could not be made certain by reference to the record of its location, nor by any actually existing monuments, the fence which had stood fronting upon and against it for more than twenty years was properly regarded as its true and legal boundary. Rev. Sts. *c.* 24, § 61. This is not doubted by either of the parties. But it having been shown at the trial that the original structure was a Virginia fence, a question arose as to the precise point or place of division between the highway and the plaintiff's close. The presiding judge instructed the jury to consider the centre of its rails as the line of the fence, and this line as the boundary of the road. They were also further advised, in broader terms, that, when land bounds on a highway, the owner has the same right as against the public, to set one half of his fence within its limits, that he would have to place one half of a division fence upon the land of an adjoining proprietor. The latter ruling, we think, is very obviously incorrect. The cases are widely different. Adjoining proprietors are under equal obligations, expressly imposed upon them by law, to keep up and maintain suitable partition fences between their respective estates; and they are to bear in equal proportions the expenses necessarily incurred in performance of the duty required. And from this mutual obligation and responsibility is deduced the legal authority and right of each of the parties to occupy, for the purpose of building and maintaining a fence, the land

of the other, to the extent of one half the width of the neces-
sary structure. Rev. Sts. *c.* 19, § 2. *Newell* v. *Hill*, 2 Met. 180

But, as between the public and the owner of land abutting
upon a highway, no such mutual duty or obligation exists, and
therefore there can be no corresponding right or privilege.
*Stackpole* v. *Healy*, 16 Mass. 33. Whenever land is taken under
authority of law, and appropriated to public use for a common
highway, the owner, being entitled to a full indemnity, may claim
remuneration for all expenses necessarily incurred, as a part of
the damage which he has sustained, or which has been caused to
his estate. Rev. Sts. *c.* 24, § 11. If the cost of erecting, or of
afterwards maintaining a fence, is the necessary, natural or prob-
able consequence incident to the taking of the land for a high-
way, it is a charge fit to be considered, and to a reasonable
amount allowed, by the commissioners or municipal authority by
which it is established, or by the jury by whom their doings may
be revised. *First Parish in North Bridgewater* v. *County of
Plymouth*, 8 Cush. 475. And on the other hand, the easement
acquired by the public by the due and legal location of a common
highway is coextensive with the exterior limits by which it is
bounded and described; and any encroachment upon any part
of the land within those limits, by a deposit of materials intended
to be left permanently there, is a violation of the public right,
which may be prosecuted and punished as a nuisance. *Common-
wealth* v. *King*, 13 Met. 115.

The verdict of the jury does not, however, depend upon main-
taining this proposition. It was well warranted and indeed
required by the simple and exact rule prescribed by the court,
that the centre line of the rails of the Virginia fence was to be
considered the line of that, and the boundary of the road. And
confining the rule to the state of facts shown upon the trial,
and to this peculiar species of fence, we think this instruction
to the jury was in substantial conformity to the meaning and
intent of the statute. A Virginia fence was probably never
anywhere thought to follow the precise line of division between
conterminous proprietors; but only, by continually crossing and
recrossing it, to indicate with reasonable certainty its true local-

ity. Between private proprietors, therefore, there would be no difficulty in adopting the centre of the rails as their dividing line. And considering the customs and usages of the country, and the extreme improbability that a highway would have ever been located with such exterior limits as would be caused by the zigzag course of a Virginia fence, it would be an unreasonable perversion of the provisions of the statute, not to apply the same rule in ascertaining and determining the extent of the public easement and the rights of the owner of the adjoining land.

3. The jury were properly instructed that the burden of proof was, throughout the whole case, upon the plaintiff. It was only stating to them a part of the same proposition in detail, when they were further told that they ought to return a verdict for the defendant, if they were not satisfied that the act complained of as a trespass was committed within the close described in the writ, or if they doubted whether it was within the limits of the highway. Certainly, if they had doubts as to the place where the act was done, they could not be certain or reasonably satisfied that it was done upon the land of the plaintiff, without proof of which he was clearly not entitled to recover.

4. We see no objection to the suggestion of the court that the term " road," as used in the declaration, should, under the circumstances of this case, be considered as equivalent to " highway." There was in fact a highway there, laid out by public authority in substantially the same place, and along the same general line in which the travelled way or road, mentioned by the plaintiff, extended. The former is the generic term, which necessarily embraced the latter ; and the road, therefore, could not be in width less than commensurate with the highway.

*Exceptions overruled.*